**UNITED STATES of America,
Appellant,**

v.

**Loren Larry MUNDT, Appellee.**

No. 86–5383.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1987.

Decided May 23, 1988.

Rehearing and Rehearing En Banc
Denied July 8, 1988.

Rondey S. Webb, Fargo, N.D., for appellant.

---

C. Charles Chinquist, Fargo, N.D., for appellee.

Before JOHN R. GIBSON, BOWMAN, and WOLLMAN, Circuit Judges.

BOWMAN, Circuit Judge.

A jury returned guilty verdicts against defendant, Loren Mundt, on two counts of bank theft in violation of 18 U.S.C. § 2113. The issue in this appeal by the government is whether the District Court erred by granting Mundt's motion for judgment of acquittal on the ground that the evidence was insufficient to support the verdicts.

■ · A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged. *See United States v. DeLuna,* 763 F.2d 897, 924 (8th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). "The evidence need not exclude every reasonable hypothesis except guilt; the essential elements of the crime may be proven by circumstantial, as well as direct evidence." *United States v. Nabors,* 762 F.2d 642, 653 (8th Cir.1985). This standard of review is applicable on appeal from both the denial and the grant of a motion for judgment of acquittal. *See, e.g., United States v. Singleton,* 702 F.2d 1159, 1162–63 (D.C.Cir. 1983); *United States v. Steed,* 674 F.2d 284, 286 (4th Cir.) (en banc), *cert. denied,* 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 68 (1982).

The evidence, stated in the light most favorable to the government, is as follows. Mundt owned a maintenance and snow removal business. He transacted much of his business using cash. In 1984, he was having serious financial difficulties. He was behind in payment to a number of major creditors and wrote several checks for which he had insufficient funds. During this time, Mundt borrowed money to cover these bad checks and to avoid foreclosure of his home mortgage.

In March 1984, Mundt spent two weeks working as a substitute maintenance man at the West Fargo State Bank. In April or May, he obtained a contract to clean the carpets at the bank. For his use on Saturday, May 4, 1984, when he commenced the cleaning job, he was given a set of keys to the bank and to the alarm system. One of Mundt's employees spent part of Saturday, May 4, and Sunday, May 5, cleaning the bank's carpets. The employee testified that Mundt was alone in the bank when she left on Saturday evening.

The bank was closed that day except for a drive-up window service in which two part-time tellers worked. At the conclusion of their shift, the tellers balanced and locked their cash drawers, placed them in the vault in the drive-up area, and locked the vault.

Inside the vault in the drive-up teller area, the cash drawers were placed in slots, one above the other, and locked into place. There was a key for each cash drawer, which was kept in a separate coin tray. The coin trays were not locked into place. Each cash drawer and its corresponding key was marked with the name of the employee who used it. The drawers contained approximately $500 in bait money, consisting of bills with recorded serial numbers.

The bank officers, the head teller, the regular drive-up teller, and one of the part-time tellers working on Saturday, May 4, 1984, knew the combination to the vault. It was also written down in two locations inside the bank: on the last page of a desk calendar in the office of one of the bank officers and beneath a pencil holder in the office of another bank officer.

On Monday, May 7, 1984, approximately $10,000 in currency was found missing from the vault in the drive-up teller area. Out of the four cash drawers locked into place in the vault, two were found to be missing approximately one-half of their money. A third drawer was found with a key twisted off in the cover lock. Scratches were noted adjacent to a rolled coin drawer, but no money was missing from it. Nor was any bait money taken. There

were no signs of forced entry. Mundt's fingerprints were not found in the area. Shortly following the theft, Mundt paid a total of nearly $4,500 to various of his creditors. None of these payments was made by check.

On or about June 1, 1984, Mundt secured a cleaning contract at Northwestern Federal Savings & Loan Association. Although he assigned one of his employees to do the work the contract required, Mundt had access to the building to inspect his employee's work and to perform extra work for which he charged an additional fee. During August 1984, Mundt contracted with Northwestern to clean the recessed ceiling light fixtures in the basement, where the main vault was located.

The main vault was a walk-in vault opened by a combination dial. The officers and several employees of Northwestern had round-the-clock access to the building and knew the combination to the main vault. Anyone with uninterrupted access to the vault, armed with only a screwdriver and a knowledge of combination locks, could learn the combination in a matter of minutes. On one occasion, Mundt's employee found the vault door standing open and notified Mundt, who had studied basic locksmithing.[1] Mundt indicated that he would "take care of it." On another occasion, a bank employee noticed Mundt standing on a stepladder in the vicinity of the door as she opened the vault. The vault also had an alarm gauge with an indicator that would inform someone knowledgeable in its workings whether the vault could be opened without triggering the alarm.

At the close of each business day, the tellers balanced and locked their cash drawers. The drawers then were sent to the basement in a dumbwaiter to be locked into the main vault.

Each drawer contained approximately five $20 bills as bait money, at least one of which was set in a spring clip holder. If the bill in the clip was removed after the drawer was set in place in the teller line, it would trigger a silent alarm at the police station. The key to each cash drawer either was kept with the teller or carefully hidden in the teller's work area. Spare keys were kept in a manila envelope in an unlocked file cabinet and in an unlocked drawer in the bank treasurer's office. The keys were marked with numbers that matched numbers stamped on each cash drawer.

On Wednesday, September 5, 1984, approximately $12,000 was found missing from Northwestern's main vault. One cash drawer was completely empty, and the remaining drawers contained only the $20 bill in the spring clip alarm. Some bait money was taken. There were no signs of forced entry to the vault. No fingerprints recovered from the vault were identified as being Mundt's.

In the week following this theft, Mundt spent cash totaling approximately $7,000.[2] During the period May 1, 1984 through October 31, 1984 (a period encompassing both of the bank thefts), Mundt spent nearly $8,000 more than his verifiable income for that period.[3]

Mundt was indicted on two counts of bank theft and two counts of possession of stolen bank property in violation of 18 U.S.C. § 2113. The case was tried to a jury.

At the close of the government's case, the District Court dismissed the possession counts and denied Mundt's Fed.R.Crim.P. 29 motion for judgment of acquittal. At the close of the entire case, Mundt made

---

1. Mundt took a correspondence course in locksmithing. Upon completion of the course, he retained a number of the lessons, one of which dealt with combination locks.

2. None of Mundt's cash disbursements investigated by the FBI contained any of the recorded serial numbers of the bills missing from Northwestern.

3. The prosecution arrived at this figure by analyzing both Mundt's income from all verifiable sources and his expenditures for that period. In rebuttal, Mundt's accountant attempted to compute income and expenditures for the entire 1984 calendar year. He concluded that Mundt had sufficient income for the year to cover all of his known expenses. The accountant's analysis, however, did not reveal a legitimate source for the large sums that Mundt spent during the six-month period in question.

another Rule 29 motion. The court reserved ruling on the motion and submitted the two counts of bank theft to the jury.

 The jury returned guilty verdicts on both counts. The District Court then granted defendant's motion for judgment of acquittal, finding that the evidence was insufficient to support the verdicts. The government appeals this ruling pursuant to 18 U.S.C. § 3731.[4] We reverse.

██ We have carefully reviewed the nine-volume transcript in this case, and we are convinced that, viewing the evidence in the light most favorable to the government, there is sufficient evidence in the record to support the jury's verdicts of guilty. In granting the acquittal, the District Court weighed the evidence and drew inferences therefrom, rather than leaving this to the jury. This is not the District Court's task. The evidence at trial shows that Mundt was having serious financial difficulties. He had access to each building at the time of each theft, had the opportunity to discover the combinations to both vaults and the opportunity to open them while alone in the banks, and had studied locksmithing. He was the only apparent common denominator in the similar robberies of the two unrelated banks. Moreover, Mundt spent unusually large amounts of money shortly after each theft—money for which he failed to show a legitimate source. Although all the evidence pointing toward Mundt's guilt is circumstantial, it clearly is evidence on which a reasonable jury could find him guilty beyond a reasonable doubt on the two counts of bank theft.[5] Accordingly, the District Court erred in overturning the jury's verdicts on those two counts.

The judgment of acquittal entered by the District Court is reversed, the jury verdicts are reinstated, and the case is remanded to the District Court for sentencing.

---

4. Mundt argues that this Court lacks jurisdiction over this appeal pursuant to 18 U.S.C. § 3731. Section 3731 allows appeals by the government in criminal cases except when such an appeal would violate the Double Jeopardy Clause of the Fifth Amendment.

"When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal." *United States v. Jenkins,* 420 U.S. 358, 365, 95 S.Ct. 1006, 1011, 43 L.Ed.2d 250 (1975) (citing *United States v. Wilson,* 420 U.S. 332, 344–45, 95 S.Ct. 1013, 1022–23, 43 L.Ed.2d 232 (1975)), *overruled on other grounds, United States v. Scott,* 437 U.S. 82, 94–101, 98 S.Ct. 2187, 2195–99, 57 L.Ed.2d 65 (1978). Where a jury returns a verdict of guilty but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. *See id.*

This exact sequence of events occurred at Mundt's trial. Mundt submits, however, that the critical point of analysis is not when a judgment of acquittal is entered by the court, but rather when the motion for judgment of acquittal is made by a defendant. If the motion is made before the jury returns a verdict, when it is granted it is irrelevant. It should be treated as having been granted before the verdict.

Such artificial distinctions cut against the very purpose of the Double Jeopardy Clause. The Clause protects against the threat of multiple punishment or successive prosecution. Because there is no such threat when reversal on appeal would merely reinstate the jury's verdict, the Double Jeopardy Clause is not offended.

*See Wilson,* 420 U.S. at 344–45, 95 S.Ct. at 1022–23.

A review of the relevant case law in this Circuit confirms this result. In *United States v. Woodruff,* 600 F.2d 174 (8th Cir.1979), defendant made a motion for judgment of acquittal at the close of all the evidence. The trial court granted the motion after the jury verdict. This Court held that "where the trial court grants a judgment of acquittal after a guilty verdict has been returned, appeal by the government is authorized by § 3731, and such an appeal does not offend the Double Jeopardy Clause." *Id.* at 175 (citations omitted). The *Woodruff* court did not draw any artificial distinctions based upon the timing of the defendant's motion.

5. There was also opinion testimony based on an investigation conducted by an outside, private agency tending to exonerate the employees of the West Fargo State Bank from that theft. The District Court viewed this testimony as being highly prejudicial to Mundt and intimated that it should not have been admitted into evidence. However, it was admitted, and no issue is raised on this appeal as to its admissibility. It thus was part of the totality of evidence before the jury, and it was for the jury to decide what, if any, weight should be given to this evidence. *See United States v. McGinnis,* 783 F.2d 755, 758 (8th 1986). This conclusion applies with equal force to the less than complimentary testimony describing Mundt's apparent financial irresponsibility, the poor quality of his work, and his convoluted financial methods.