_____

No. 95-3559
_____

United States of America,    *
                             *
         Appellee,           *
                             *  Appeal from the United States
    v.                       *  District Court for the
                             *  Western District of Missouri.
Paul William Cunningham,     *
                             *
         Appellant.          *


_____

Submitted:  February 13, 1996

Filed:  May 6, 1996
_____

Before BOWMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

BOWMAN, Circuit Judge.

     A jury convicted Paul William Cunningham of one count of conspiring
to transport money obtained by fraud in interstate commerce in violation
of 18 U.S.C. § 371 (1994) and one count of transporting money obtained by
fraud in interstate commerce in violation of 28 U.S.C. § 2314.  The
District Court[1] sentenced Cunningham to two concurrent terms of twenty
months of imprisonment followed by two concurrent terms of three years of
supervised release.  The court also imposed a $100 assessment and ordered
Cunningham to make restitution to the victims of his crimes in the amount
of $155,832.37.  Cunningham timely appeals his convictions.  We affirm.

_____

    [1]The Honorable Dean Whipple, United States District Judge for
the Western District of Missouri.

Cunningham married Carol W. Jones in the early 1960s. By the mid-1960s they were divorced. Between 1965 and 1988, Cunningham and Jones did not maintain contact with each other. By 1988, Jones had become president and chairman of the board of directors of Jackson County Escrow Services, Inc. She also owned twenty percent of the outstanding shares of Jackson County Escrow. As president of Jackson County Escrow, Jones was responsible for the day-to-day operations of the corporation. In 1986 Jones began stealing large amounts of money from the corporation. She used her authority over the corporation's accounts, including its escrow account, to transfer corporate and client funds to satisfy her personal obligations. As a result of a probe by the Federal Bureau of Investigation, Jones pleaded guilty to mail fraud charges and cooperated with the FBI in its investigation of Cunningham and others. As a part of her plea agreement, Jones testified against Cunningham at his trial.

Jones testified that she contacted Cunningham in 1988, while Cunningham was living in Oklahoma, and asked him to loan her $100,000 to $150,000. Jones needed the money to cover her current husband's gambling debts and to make up a shortfall in the escrow account of Jackson County Escrow. Jones believed that Cunningham might have funds available because she believed that he was a successful bookmaker. Cunningham was not able to loan Jones any money. Cunningham later asked if Jones could loan him $20,000, and Jones agreed to loan him $20,000 at ten percent interest. As the new relationship between Jones and Cunningham blossomed, Jones began sending or wiring from Missouri large amounts of escrow funds to Cunningham in Oklahoma. In some instances Jones sent Cunningham checks, which Cunningham endorsed, that were inscribed on their face as "Escrow Account" checks. In other instances, Jones would wire money. At the same time, Cunningham and Jones were engaged in daily telephone conversations. Cunningham, however, used the code

name "Don" when he called Jones at her office. Additionally, Federal Express packages sent from Jones to Cunningham were addressed to code names for Cunningham such as Don Hawkins at a rented private mail box.

When Cunningham received money from Jones, he generally sent back some percentage of the money to Jones in Missouri. The money Cunningham returned was deposited in the personal bank account of Harold and Carol Jones at a rural bank near the Lake of the Ozarks. In all, Jones sent Cunningham $155,832.37. Cunningham sent $70,491.64 back to Jones, keeping $85,340.73 for his own use. According to Jones, she hoped that Cunningham would use the escrow money to win more money through his illegal bookmaking. Jones testified that toward the beginning of their joint activities she told Cunningham that she was getting the money from the escrow account of her business and that she would probably have to go to jail if she did not pay back the money she had stolen. She also testified that it was Cunningham's idea to use false names when sending funds through Federal Express and when calling Jones at her office.

Cunningham testified at trial in his own defense. He denied that he knew about Jones's illegal activities. He testified that he believed that Jones was loaning him the money she was sending him. He admitted, however, that no documents existed that would show that the transfers were loans. He also testified that he was unemployed during the relevant time period and that his only source of income was from his illegal bookmaking activities. When asked on cross-examination why Jones required him to remit a portion of the funds back to her, Cunningham testified that he never asked Jones and that he "remained ignorant." Trial Tr. at 258.

Jones testified that after Jackson County Escrow failed she and Cunningham had a number of conversations concerning the length of the statute of limitations, Cunningham's belief that he would

not have to return the money because the limitations period had expired, and the "story" that Jones would give to investigators regarding the transfers of funds to Cunningham. When Jones suggested that she tell the FBI that her husband was placing bets through Cunningham, Cunningham demurred. He said that he did not want the FBI to know that money had been transferred across state lines. At trial, Cunningham testified that he knew it was illegal to transport across state lines money that had been obtained through theft or fraud.

II.

Cunningham argues that the District Court abused its discretion by instructing the jury, consistent with Eighth Circuit Model Criminal Jury Instruction 7.04 (1994), that it could impute knowledge to Cunningham if it found that he deliberately remained ignorant of the fact that the money he received had been obtained through fraud or theft. Cunningham also argues that the District Court should have granted his motion for a judgment of acquittal because the evidence is insufficient to support the jury's verdict on either count. We address each of these issues in turn.

A.    Deliberate Ignorance Instruction

According to Cunningham, the only contested element of the offenses charged was the element of knowledge. Cunningham has steadfastly maintained that he had no knowledge of Jones's illegal activities. With respect to the proof required for the jury to find that the defendant acted knowingly, the District Court instructed the jury in relevant part as follows:

> You may find that the defendant acted knowingly if you
> find beyond a reasonable doubt that the defendant was aware of
> a high probability that the money sent to him by Carol Jones
> was stolen or had been obtained by fraud from Jackson County
> Escrow and that he deliberately avoided learning the truth.
> The element of knowledge may be

inferred if defendant deliberately closed his eyes to what would otherwise have been obvious to him.

You may not find that the defendant acted knowingly, however, if you find that the defendant actually believed that the money sent to him was not stolen or obtained by fraud from Jackson County Escrow. A showing of negligence, mistake, or carelessness is not sufficient to support a finding of knowledge.

Instruction 22. The District Court's instruction was patterned after Eighth Circuit Model Criminal Jury Instruction 7.04, which is based upon our decisions in United States v. Massa, 740 F.2d 629, 643 (8th Cir. 1984), cert. denied, 471 U.S. 1115 (1985), United States v. Graham, 739 F.2d 351, 352 (8th Cir. 1984), and United States v. Kershman, 555 F.2d 198, 200 (8th Cir.), cert. denied, 434 U.S. 892 (1977). Cunningham argues that this deliberate ignorance (or willful blindness) instruction should not have been given because it is not supported by the evidence. He contends that the evidence proved either that he did or did not have actual knowledge of Jones's illegal activities. In Cunningham's view, no evidence tends to show that he made a deliberate effort to avoid learning the truth.

We will reverse a district court on an instructional issue only when the court has abused its wide discretion to formulate jury instructions. United States v. Darden, 70 F.3d 1507, 1541 (8th Cir. 1995), cert. denied, No. 95-8295, 1996 WL 138047 (U.S. Apr. 15, 1996). If the instructions, viewed as a whole, fairly and adequately contain the law applicable to the case, we will not disturb the jury's verdict. Id. A deliberate ignorance instruction should not be given in every case because there is a possibility that the jury will use a "negligence standard and convict a defendant on the impermissible ground that he should have known [an illegal act] was taking place." United States v. Barnhart, 979 F.2d 647, 651 (8th Cir. 1992) (citations omitted). In Barnhart, we stated that such an instruction should not be given unless there is evidence from which a jury reasonably could find

"that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense" to criminal charges. Id. at 652 (citations omitted).

Cunningham argues that the instruction should not have been given because, "[i]n reality, the case boils down to a credibility battle between Mr. Cunningham and his ex-wife, Ms. Jones." Appellant's Brief at 21. Cunningham testified that he did not know that the money Jones was sending him had been taken by theft or fraud from Jackson County Escrow. Jones, on the other hand, testified that Cunningham knew the source of the funds because she had told him.

If the only evidence of Cunningham's knowledge was the conflicting testimony of Jones and Cunningham, Cunningham's argument might be persuasive. Cunningham, however, views the record too narrowly. In the course of deciding whether to give Instruction 22, the District Court specifically found that there was evidence indicating that the defendant was well aware that the source of Jones's funds was probably illegal. The evidence that the District Court relied on included the following: (1) at least one check made out to Cunningham was identified on its face as being drawn on the escrow account of Jackson County Escrow; (2) Cunningham used a false name when he called Jones's office; (3) wire transfers were made in the names of two individuals rather than Cunningham alone; (4) Jones eventually transferred $155,000 to Cunningham while the initial loan was to be either $30,000 or $20,000; (5) despite the large amount of money being "loaned" to Cunningham, Jones never asked him to sign promissory notes and no other records were made of the transactions that would support a finding that the transfers were legitimate loans; and (6) Cunningham was returning to Jones almost half of the money that she transferred to him. The evidence is sufficient to support a finding that Cunningham was deliberately ignorant of the fact that

the money Jones was sending him had been obtained by fraud or theft, and we thus conclude that in the circumstances of this case the District Court was well within its discretion to instruct the jury on deliberate ignorance.

B.    Sufficiency of the Evidence

When reviewing a district court's denial of a motion for acquittal, our standard of review is quite narrow.  We must view the evidence in the light most favorable to the jury's verdict, giving the government the benefit of the reasonable inferences that may be drawn from the evidence. Darden, 70 F.3d at 1517.  "We will reverse a conviction for insufficient evidence and order the entry of a judgment of acquittal only if no construction of the evidence exists to support the jury's verdict." Id. In contrast, a motion for a judgment of acquittal should be denied when "there is substantial evidence justifying an inference of guilt irrespective of any countervailing testimony that may be introduced." United States v. Armstrong, 16 F.3d 289, 292 (8th Cir. 1994).  "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt."  United States v. White, No. 95-2949, 1996 WL 154228, at *1 (8th Cir. Apr. 4, 1996).

Cunningham argues that the government did not introduce sufficient evidence of his knowledge that the transferred funds had been obtained through fraud or theft.  He insists that "[t]he only clear and uncontradicted testimony" is Cunningham's testimony that he never had any knowledge that the money involved in his transactions with Jones had been obtained through theft and fraud.  Appellant's Brief at 18.  Cunningham's argument misses the mark both factually and legally.  First, Cunningham's testimony is directly contradicted by Jones's testimony that she told him that the money had been stolen from her company's escrow account.

Second, the government is under no obligation to introduce "clear and uncontradicted testimony."

A reasonable jury could have credited Jones's testimony and found that Cunningham knew the source of the money.  As Cunningham states in his brief, the question of actual knowledge of Jones's illegal activities "boils down to a credibility battle between Mr. Cunningham and his ex-wife, Ms. Jones."  Appellant's Brief at 21.  This Court, however, is not in the best position to judge the credibility of witnesses.  It is for the jury to assess the credibility of witnesses and resolve conflicting testimony. <u>United States v. Anderson</u>, 78 F.3d 420, 422-23 (8th Cir. 1996).  In this case, Jones's testimony is sufficient to establish that Cunningham knew that the funds he was transporting and conspiring to transport in interstate commerce had been obtained by fraud or theft.

Additionally, we conclude that the jury properly could have convicted Cunningham even if it did not credit Jones's testimony.  As we decided above, the evidence was sufficient to support the giving of an instruction on deliberate ignorance.  As Cunningham testified, he remained ignorant of Jones's reasons for requiring Cunningham to remit a portion of the money she sent him from Jackson County Escrow's account to her personal bank account.  It is not by any means a stretch of the imagination to conclude that, even if he did not have actual knowledge, Cunningham "was aware of a high probability that the money sent to him by Carol Jones was stolen or had been obtained by fraud from Jackson County Escrow and that he deliberately avoided learning the truth," Instruction 22.  All of the strange circumstances surrounding his dealings with Jones point strongly to a conclusion that Cunningham could have avoided reaching only by engaging in willful blindness or deliberate ignorance:  the funds he was receiving from Jones were funds she had obtained from Jackson County Escrow by fraud or theft.

The government introduced sufficient evidence for a reasonable jury to find beyond a reasonable doubt either that Cunningham actually knew the illegal nature of Jones's activities or that he at least possessed the guilty knowledge defined by the deliberate ignorance instruction.  We thus conclude that the District Court properly denied Cunningham's motion for a judgment of acquittal.

III.

For the foregoing reasons, the judgment of the District Court is affirmed.


A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.