# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1082

_____

United States of America,       *

     *

       Appellee,      *

     *       Appeal from the United States

    v.      *       District Court for the

     *       Northern District of Iowa.

Juan Causor-Serrato,       *

     *

       Appellant.      *

_____

Submitted: September 12, 2000
Filed: December 8, 2000

_____

Before HANSEN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

A jury convicted Juan Causor-Serrato of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 (1994). The district court sentenced Causor-Serrato to 210 months in prison followed by four years of supervised release. Causor-Serrato now appeals both his conviction and his sentence on several grounds, challenging the sufficiency of the evidence to support his conviction; the admissibility of coconspirator hearsay statements; the district court's drug quantity determination at sentencing; and the district court's failure to consider a downward departure. We

affirm the conviction but vacate the sentence and remand to the district court for resentencing.

## I.

This case centers around a conspiracy to sell large quantities of methamphetamine throughout parts of Iowa. Appellant, who is a non-English speaking illegal alien from Mexico, is a central character in this conspiracy. Viewed in the light most favorable to the verdict, see United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996), the evidence reveals the following facts.

In February 1998, a confidential informant introduced an undercover agent of the Iowa Division of Narcotics Enforcement (DNE), John Douglas Hurley, to Gregory Wendt and his fiancee Kim Mancini for the purpose of purchasing methamphetamine. After making two methamphetamine purchases from Wendt and Mancini totaling 111.33 grams and obtaining a search warrant for their residence, on March 12, 1998, Agent Hurley arranged for a third methamphetamine purchase from Wendt and Mancini to take place at their home. Three minutes after Agent Hurley entered the Wendt and Mancini residence, other agents converged on the home and executed the search warrant. Agents seized drug paraphernalia, 27.68 grams of marijuana, 129.46 grams of methamphetamine, 19.07 grams of amphetamine, $2140 in cash, suspected drug notes, scales, packaging materials, and police scanners. Upon arrest, Wendt and Mancini agreed to cooperate with law enforcement. Both identified Jesus Sanchez-Ramirez as their source of methamphetamine. Mancini stated she previously obtained methamphetamine from another Hispanic male known as Celso, but because Celso was in jail, Sanchez-Ramirez became her new supplier.

On March 20, 1998, Agent Hurley and Wendt met with Causor-Serrato and Sanchez-Ramirez at the Wal-Mart parking lot in Denison, Iowa, to arrange a purchase of methamphetamine. Wanting to avoid surveillance cameras in the parking lot,

Sanchez-Ramirez ordered that the meeting be moved to the Iowa Beef Packers (IBP) parking lot. Once at IBP, Causor-Serrato waited in his truck while the meeting between Agent Hurley and Sanchez-Ramirez took place. Agent Hurley paid Sanchez-Ramirez $4950 on Wendt's behalf, satisfying a past-due drug debt. Sanchez-Ramirez then fronted the agent two, one-ounce packages of methamphetamine and arranged a one-pound purchase costing $12,000 with delivery and payment to be made later.

On April 6, 1998, Mancini alerted Agent Hurley that Sanchez-Ramirez and Causor-Serrato had just delivered eight ounces of methamphetamine to her home in Kiron, Iowa, and were looking for payment. Agent Hurley sent another agent to Mancini's home to pick up the methamphetamine. That evening at Mancini's home, Agent Hurley paid Sanchez-Ramirez $11,800 representing the eight ounces of methamphetamine received that day and the two ounces fronted on March 20. Causor-Serrato was also present at this meeting. Agents then converged upon the Wendt and Mancini home, arresting Sanchez-Ramirez and Causor-Serrato.

After waiving his right to counsel and agreeing to speak with agents, Causor-Serrato stated he agreed to begin selling what he thought were "onions" for Celso. Causor-Serrato would often meet Celso at various locations in Storm Lake, Iowa. During those meetings, Celso would place the methamphetamine packages in the back of Causor-Serrato's truck, direct him where to deliver the packages (to "the lady in Kiron"), and the prices to charge for each. (Appellee App. at 83.) Causor-Serrato then relayed these prices to Sanchez-Ramirez, who acted as Causor-Serrato's translator during the transactions. Causor-Serrato told DNE agents he never knew what the packages contained but knew he was to charge approximately $1400 for each.

After having received significant reductions in their own sentences pursuant to United States Sentencing Guidelines (USSG) § 5K1.1 for rendering the government substantial assistance, and hoping for even more of a reduction under Federal Rule of Criminal Procedure 35, Wendt and Mancini testified at Causor-Serrato's sentencing

hearing that between January and April, 1998 they received at least one pound of methamphetamine from Sanchez-Ramirez and Causor-Serrato. (See Sent. Tr. at 13-14, 40, 45.) At sentencing, the district court adopted the recommendation of the United States Probation Office and concluded Causor-Serrato had a criminal history category of I and a total offense level of 37, placing him within the sentencing guideline range of 210 to 262 months. Although Causor-Serrato requested a two-level reduction by agreeing to be voluntarily deported, the district court declined to consider a downward departure and sentenced Causor-Serrato to 210 months of confinement with four years of supervised release. Causor-Serrato contends on appeal the evidence was insufficient to establish he was a knowing member of a conspiracy to distribute methamphetamine, and because he was not a conspirator, statements of conspiracy members were not admissible against him during his jury trial. He further asserts that even if his conviction is upheld, his total offense level should be reduced.

## II.

### A. *Sufficiency of the Evidence*

"'In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict.'" United States v. Davidson, 195 F.3d 402, 406 (8th Cir. 1999) (quoting United States v. Erdman, 953 F.2d 387, 389 (8th Cir.), cert. denied, 505 U.S. 1211 (1992)), cert. denied, 120 S. Ct. 1218 (2000). "We will reverse a conviction for insufficient evidence and order the entry of a judgment of acquittal only if no construction of the evidence exists to support the jury's verdict." Cunningham, 83 F.3d at 222. To find Causor-Serrato guilty, the government had to prove "(1) a conspiracy existed; (2) [Causor-Serrato] knew of the conspiracy; and (3) [he] knowingly became a part of the conspiracy." Davidson, 195 F.3d at 406. Once the government establishes that the conspiracy existed, only slight evidence is required to

link the defendant to the conspiracy. See United States v. Womack, 191 F.3d 879, 884 (8th Cir. 1999). Therefore, "'a defendant challenging the sufficiency of the evidence in a conspiracy case has a heavy burden.'" Id. (quoting United States v. Kates, 508 F.2d 308, 310 (3d Cir. 1975)). To be a conspirator, it is not required that Causor-Serrato knew all the details of the conspiracy. See United States v. Hernandez, 986 F.2d 234, 236 (8th Cir. 1993).

Causor-Serrato denies ever knowing the actual contents of the packages Celso instructed him to deliver, and therefore, he argues, he was not a knowing participant in the conspiracy. We find his statement that he thought he was selling onions patently absurd. The district court said it was "ridiculous." (Sent. Tr. at 65.) For example, Causor-Serrato told agents upon arrest that Celso directed him to charge $1400 per ounce or per onion and never to accept less than $1200 per ounce or onion. Although Cuasor-Serrato may not have known that he was dealing specifically in methamphetamine, his ludicrous assertion that he was selling onions belies his supposed ignorance that the packages contained a controlled substance.

Causor-Serrato further maintains that his inability to speak English, combined with Agent Hurley's and Wendt and Mancini's inability to speak Spanish, precludes him from conspiratorial conduct. We disagree and conclude his argument is unconvincing. The jury heard Agent Hurley testify that when he would speak to Sanchez-Ramirez when arranging a methamphetamine buy, Sanchez-Ramirez would turn to Causor-Serrato, mumble something in Spanish, and Causor-Serrato would respond in Spanish. (See Appellee's App. at 20-21, 48.) Sanchez-Ramirez would then respond in English to Agent Hurley confirming the drug purchase. (See id.) Certainly a reasonable jury could infer from this colloquy that Causor-Serrato was actively participating in the drug sales as a principal supplier, using Sanchez-Ramirez as a middleman/translator. In addition, Causor-Serrato always accompanied Sanchez-Ramirez when either methamphetamine or money was exchanged with Agent Hurley, Wendt, or Mancini. (See Presentence Investigation Report (PSIR) ¶¶ 29-33.)

Causor-Serrato contends his mere presence at the location of a crime, even when coupled with knowledge of that crime, is not sufficient to establish guilt on a conspiracy charge. He fails to recognize, however, that only slight evidence connecting a defendant to the conspiracy may be enough to sustain a conviction. See United States v. Pena, 67 F.3d 153, 155 (8th Cir. 1995); see also United States v. Hernandez, 986 F.2d at 236 (finding less than overwhelming evidence sufficient to uphold a conspiracy conviction). The government need only prove that Causor-Serrato tacitly agreed to participate in the conspiracy and that he intended its unlawful goal. See United States v. Agofsky, 20 F.3d 866, 870 (8th Cir.), cert. denied, 513 U.S. 909 (1994). When taken in the aggregate, Causor-Serrato's attendance at the buys, combined with his willing sale and delivery of the methamphetamine with Sanchez-Ramirez, illustrates that the government well surpassed the threshold of producing enough evidence linking Causor-Serrato to the conspiracy.

## B. *Coconspirator Statements*

Causor-Serrato further challenges the admission of out-of-court statements made by Sanchez-Ramirez. A coconspirator's out-of-court statement is considered nonhearsay and admissible against a defendant provided the government proves "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978). The district court's decision on admissibility of the evidence is reviewed for an abuse of discretion. See United States v. O'Dell, 204 F.3d 829, 833 (8th Cir. 2000). Following the procedure delineated by Bell, the district court conditionally admitted the statements and made a final ruling on admissibility at the close of the evidence.

Causor-Serrato argues no independent evidence existed to support the district court's admission of the out-of-court statements made by his coconspirator. We disagree. The Supreme Court held that"there is little doubt that a coconspirator's

statements could <u>themselves</u> be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." <u>Bourjaily v. United States</u>, 483 U.S. 171, 180 (1987) (emphasis added). Moreover, we stated in <u>United States v. Cerone</u>, that "[t]he [trial] court is not required to independently inquire into the reliability of the co-conspirator statement." 830 F.2d 938, 948 (8th Cir. 1987) (internal citation omitted), <u>cert. denied</u>, 486 U.S. 1006 (1988).

Additionally, the government produced direct evidence of both the conspiracy and Causor-Serrato's willing participation. Wendt and Mancini repeatedly testified to Causor-Serrato's involvement with, and presence during, the methamphetamine transactions. Agent Hurley's testimony supported the codefendants' statements. Finally, while in police custody, Causor-Serrato admitted to his involvement in selling "onions" to Wendt, Mancini, and Agent Hurley. (<u>See</u> Sent. Tr. at 10.) In viewing the evidence in the light most favorable to the government, the district court's admission of the coconspirator statements was proper, and we see no abuse of discretion. Accordingly, we reject Causor-Serrato's argument that the coconspirator statements should not have been admitted because no independent evidence existed to show a conspiracy and his participation in it.

## C. *Drug Quantity*

Causor-Serrato also challenges the district court's determination of drug quantity, claiming the district court made no specific findings on the amount attributable to him. We review the quantity findings of the district court for clear error. <u>See</u> <u>United States v. Granados</u>, 202 F.3d 1025, 1028 (8th Cir. 2000). The court may "consider any evidence in its sentencing determination as long as it has sufficient indicia of reliability to support its probable accuracy." <u>United States v. Behler</u>, 14 F.3d 1264, 1273 (8th Cir.) (internal quotations omitted), <u>cert. denied</u>, 513 U.S. 960 (1994). Because of the deferential standard of review, a reviewing court will only reverse when the entire record firmly illustrates that the lower court made a mistake. <u>See</u> <u>Anderson v. City of</u>

7

Bessemer City, N.C., 470 U.S. 564, 573 (1984) ("This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.").

At sentencing, the district court determined that at least one thousand kilograms of marijuana equivalent of methamphetamine mixture were attributable to Causor-Serrato. Causor-Serrato asserts on appeal that only 605.8 kilograms of marijuana equivalent is possibly attributable to him because this amount represents the actual quantity of methamphetamine involved in the transactions with undercover agents. The dispute therefore lies with the remaining 608.4 grams of methamphetamine mixture attributed to Causor-Serrato by Wendt while in police custody. Wendt stated he purchased the 608.4 grams of methamphetamine from Sanchez-Ramirez and another Hispanic male, who Wendt later determined to be Causor-Serrato. (See Sent. Tr. at 52.) In comparison, Mancini stated she and Wendt received between one-eighth and one-quarter ounce of methamphetamine per week from Sanchez-Ramirez during the period of January to March, 1998. Mancini was only able to initially link Causor-Serrato to the transactions through his acting as Sanchez-Ramirez's driver. (See id. at 56.) Subsequent to her § 5K1.1 induced testimony, however, Mancini stated Causor-Serrato's involvement in the transactions was as a negotiator rather than merely a driver. (See id.)

The district court was quite suspect of both Wendt's and Mancini's testimony in light of the aforementioned inconsistencies between their statements made upon arrest and those made at trial, and it was not overwhelmingly convinced of either's veracity. (See id. at 58, 69.) The government, however, presented corroborating evidence that supported the coconspirators' testimony. Specifically, Agent Hurley was able to make repeated methamphetamine purchases from Wendt and Mancini reflective of the amounts of methamphetamine the two attributed to Causor-Serrato, while Agent Hurley's testimony also corroborated Causor-Serrato's overall involvement in the scheme. (See id. at 59.)

8

"'We are particularly hesitant to find clear error in the district court's findings of fact where those findings are based on determinations of witness credibility.'" United States v. Johnston, 220 F.3d 857, 863 (8th Cir. 2000) (quoting United States v. Padilla-Pena, 129 F.3d 457, 467 (8th Cir. 1997)). Because the district court is best able to assess the value of testimony, that court's determination regarding the extent of Causor-Serrato's involvement in the conspiracy was within its fact-finding purview, and because we do not find it to be clearly erroneous, it will not be disturbed. The law is well-settled that a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal. See United States v. Hyatt, 207 F.3d 1036, 1038 (8th Cir. 2000); United States v. Behler, 187 F.3d 772, 777 (8th Cir. 1999).

After carefully reviewing the evidence presented, including, in particular, its assessment of the credibility of Wendt and Mancini, the district court found the government met its burden regarding drug quantity and determined a level 32 base offense to be appropriate. Our review of the record convinces us that the district court acted well within its authority by reasonably estimating drug quantity predicated on its assessment of the evidence. See USSG § 2D1.1, comment. (n.12); United States v. Newton, 31 F.3d 611, 614 (8th Cir. 1994). Therefore, the district court did not err in determining the amount of methamphetamine attributed to Causor-Serrato.

D. *Departure*

Finally, Causor-Serrato argues the district court erred when it ruled it had no authority to consider a two-level downward departure in exchange for voluntary deportation. A district court's "discretionary decision not to depart from the [Sentencing] Guidelines is unreviewable on appeal absent an unconstitutional motive." United States v. Saelee, 123 F.3d 1024, 1025 (8th Cir. 1997). We have jurisdiction to review a district court's decision not to depart "only where the decision is based on the district court's legally erroneous determination that it lacked authority to consider a

particular mitigating factor."  Id.; see United States v. Navarro, 218 F.3d 895, 897 (8th Cir. 2000); United States v. Hernandez-Reyes, 114 F.3d 800, 802 (8th Cir. 1997).  We review a district court's decision to depart from the Sentencing Guidelines for an abuse of discretion.  See Saelee, 123 F.3d at 1025.

In this case, the district judge stated:  "I don't think I have the authority to depart. . . .  Therefore, if you appeal [my decision] and there is such a[n Eighth Circuit] case and I'm wrong, it would be remanded to me to make a determination of whether I would exercise my discretion to depart."  (Sent. Tr. at 71.)  Because the district court did not recognize that it had authority to consider departure, the issue should be remanded for consideration.  See, e.g., United States v. Cruz-Ochoa, 85 F.3d 325, 325-26 (8th Cir. 1996) (vacating and remanding case for resentencing when the district court erred as a matter of law by incorrectly believing it did not have authority to depart from the Sentencing Guidelines on the basis of defendant's waiver and consent to administrative deportation).

III.

For the reasons discussed above, we vacate Causor-Serrato's sentence and remand to the district court for resentencing after due consideration of whether a downward departure is warranted, an issue upon which we express no opinion or intimation.  On remand, the departure issue is the only issue before the district court. All other sentencing issues are hereby affirmed.  In all other respects, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

10