**UNITED STATES of America Plaintiff,**

v.

**Cesar Daniel GASCON–GUERRERO, Defendant.**

No. 4:04–CR–00199.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 18, 2005.

John S. Courter, United States Attorney, Des Moines, IA, for Plaintiff.

Thomas G. Keiderling, Thomas G. Keiderling, Timothy S. Ross–Boon, Federal Public Defender's Office, Patrick H. Payton, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court are Defendant Cesar Daniel Gascon–Guerrero's renewed Motion for a Judgment of Acquittal, made orally after the jury verdict in this case on July 1, 2005, and Motion for New Trial (Clerk's No. 216) filed on July 12, 2005.[1] On July 1, 2005, Defendant was found guilty by jury verdict of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1). The jury also found that it was reasonably foreseeable to Defendant that a quantity of 500 grams or more of a mixture or substance containing

---

1. The Defendant made a timely motion, under Federal Rule of Criminal Procedure 33, to extend time for filing his motion for new trial within the seven-day period prescribed, which the Court granted. *See* Clerk's Nos. 210, 214.

methamphetamine was involved in the conspiracy in violation of 21 U.S.C. § 841(b)(1)(A)(viii). The Government resisted the Defendant's motions. The matter is fully submitted.

## I. MOTION FOR A JUDGMENT OF ACQUITTAL

### A. *Standard of Review*

The Defendant asserts that there was insufficient evidence for a reasonable jury to find him guilty beyond a reasonable doubt, even when taking the evidence in the light most favorable to the jury verdict. The standard that this Court must apply in ruling on a motion for a judgment of acquittal is whether the evidence proffered by the Government in support of its case was sufficient to warrant a jury in finding the Defendant guilty of the charges beyond a reasonable doubt. *United States v. Huerta–Orozco*, 272 F.3d 561, 565 (8th Cir.2001). "A district court properly denies a motion for a judgment of acquittal if 'there is substantial evidence justifying an inference of guilt irrespective of any countervailing testimony that may be introduced.'" *See United States v. Gomez*, 165 F.3d 650, 654 (8th Cir.1999) (quoting *United States v. Armstrong*, 16 F.3d 289, 292 (8th Cir.1994)). In reviewing the motion, the Court must not weigh the evidence or make independent credibility determinations. *United States v. Mundt*, 846 F.2d 1157, 1160 (8th Cir.1988) ("In granting the acquittal, the District Court weighed the evidence and drew inferences therefrom, rather than leaving this to the jury. This is not the District Court's task."). Rather, the Court must view the evidence in the light most favorable to the jury's verdict, giving the Government the benefit of every reasonable inference and resolving all evidentiary conflicts in favor of the Government. *United States v. Cunningham*, 83 F.3d 218, 222

(8th Cir.1996). "The verdict will be upheld unless no reasonable jury could find the defendant[ ] guilty." *United States v. Mendoza–Larios*, 416 F.3d 872, 2005 WL 1704860 at *1 (8th Cir.2005).

### B. *Trial Testimony*

At the close of the Government's case-in-chief, the Defendant moved for a judgment of acquittal, a motion the Court denied. Immediately after the verdict, the Defendant renewed his motion. The Court reserved ruling on the motion. The Defendant was tried along with three co-defendants who, with him, were charged with conspiracy to distribute methamphetamine. All four co-defendants were found guilty by jury verdict. The trial lasted three and one-half days. The case was submitted to the jury at 4:10 p.m. on June 30, 2005. The jury retired that evening at 5:00 p.m., to resume the next morning, July 1, 2005, at 9:00 a.m. After lunch on July 1, 2005, the jury notified the Court at 1:15 p.m. that it had reached its verdicts. During the course of the trial, the jury heard testimony from the following witnesses who, except for Augustine Sandoval Rodriguez, made references to the Defendant.

### 1. *Walter Cruz.*

Walter Cruz ("Cruz"), the first non-law enforcement witness for the Government, was asked to identify each of the co-defendants at trial. He was able to name three of the four defendants either by their given name or by an alias. When asked about the Defendant, Cruz stated: "I think I've seen him, but I don't remember very well." Day 1 Trial Tr. at 145.[2] Cruz offered no name for the Defendant. The remainder of Cruz' testimony focused only on the Defendant's identified co-defen-

---

**2.** All trial transcript references are to the Court's unedited RealTime transcript.

dants, providing detailed evidence about their drug trafficking activity.

### 2. *Augustine Sandoval Rodriguez.*

The jury heard testimony from Augustine Sandoval Rodriguez ("Sandoval"), who identified two co-defendants, Felipe Mendez, Jr. ("Mendez") and Sergio Santamaria ("Santamaria"), and stated they delivered methamphetamine to him carried in a four-door Black Chevrolet Blazer with Iowa state license plates. Day 2 Trial Tr. at 111, 119. The delivery took place, approximately, in March 2004. *Id.* at 105, 111, 127. The Blazer, according to Sandoval, carried close to twenty pounds of methamphetamine. *Id.* at 120. Sandoval, however, did not identify the Defendant or mention him in connection with the Blazer.

### 3. *Katherine Boatwright.*

Received into evidence was Government's Exhibit 149, Boatwright's plea agreement. Day 3 Trial Tr. at 95. In the Stipulation of Facts attached to the agreement, Boatwright claims she entered a conspiracy to distribute in excess of 500 grams of methamphetamine mixture with, amongst others, the Defendant. Boatwright was able to identify and name the Defendant by what she claimed was his nickname, "Danny." *Id.* at 97.

Boatwright testified that sometime during a drug deal with Mendez, she was unable to pay back approximately $3,000 that she owed Mendez for methamphetamine she had distributed on his behalf. *Id.* at 119. Evidently, Boatwright continued to fall behind on her payments to Mendez until her debt reached approximately $20,000. *Id.* at 123, 126. At Mendez' request, Boatwright flew to California, where Mendez introduced her to the Defendant. *Id.* at 128–131. She was told the Defendant would be driving back to Iowa with her in a black four-door Chevrolet

Blazer. *Id.* at 132. Boatwright testified that she and the Defendant then left California and drove to Des Moines, Iowa, where Boatwright lived. *Id.* Upon their return to Des Moines, the Defendant and Boatwright were instructed to proceed to the local Motel 6 where she witnessed the Defendant speaking with Santamaria. *Id.* at 133. After several hours at the hotel, the three returned to Boatwright's residence. *Id.* at 134. Upon their return, Santamaria left the residence and returned with two pounds of methamphetamine, of which Boatwright eventually sold one-half pound. *Id.* at 134–136.

After a time, Mendez again instructed Boatwright to fly to California,[3] this time on July 2, 2004, where she was again met by the Defendant at the airport. The Defendant was driving the same black Blazer which they previously drove to Iowa. *Id.* at 136–137. They eventually found a hotel in California. *Id.* at 137–138. The Defendant left Boatwright's company after thirty minutes. *Id.* at 138. Boatwright, still a drug user, consumed some methamphetamine and slept on and off for close to twenty four hours. *Id.* at 139. On July 4, 2004, the Defendant, with others, picked up Boatwright for an evening at a local bar. *Id.* at 141. The next day, July 5, 2004, Mendez instructed Boatwright to drive over and pick up the Defendant at his residence in the Los Angeles vicinity. *Id.* Together, they drove to Barstow, California, where they met Mendez and others, including two children. *Id.* at 144–145. Again, as instructed by Mendez, Boatwright and the Defendant travelled to Las Vegas, Nevada, in the black Blazer, where they dropped the two children off at a local apartment complex. *Id.* at 147. After only a brief stop at a casino, the Defendant and Boatwright traveled back to Boatwright's residence in Des Moines, Iowa,

---

**3.** Boatwright testified that she did not purchase any of her plane tickets.

arriving on July 7, 2004. *Id.* at 148. Only twenty minutes after her return, Mendez appeared at Boatwright's door, along with Santamaria. *Id.* at 149. Mendez and Santamaria left shortly thereafter and returned within a half-hour, bringing with them more methamphetamine, about one-quarter pound of "ice" and one-quarter pound of ordinary methamphetamine. *Id.* at 150. A great deal of drug trafficking occurred in and from the Boatwright residence on July 7 and 8, involving Mendez and Santamaria—Boatwright did not name the Defendant as she described the trafficking activity. *Id.* at 150–158. The next day, law enforcement conducted a search of the Boatwright residence, taking both the Defendant and Boatwright into custody. *Id.* at 157–158.

#### 4. *Iowa State Narcotics Officer Steven Patrick DeJoode ("Officer DeJoode")*

Officer DeJoode testified that he learned through a cooperating individual that Boatwright was a source of methamphetamine in Des Moines. *Id.* at 204. Based on surveillance of her residence, controlled buys of methamphetamine, and more information from cooperating individuals, Officer DeJoode obtained a state search warrant. *Id.* at 207. In Boatwright's residence, law enforcement officials found Boatwright, her boyfriend, and the Defendant. *Id.* at 224. The jury also heard testimony from Officer DeJoode that Mendez and Santamaria were followed by police, earlier that day, as they drove away from the Boatwright residence. They were pulled over by police for an investigatory stop. Mendez produced false documentation. During the search of the car, police found a duffle bag containing $4,800, of which around $4,000 was matched, via serial number, to money police had used to make controlled drug purchases from Boatwright. *See id.* at 212–221. Back at the residence, police

found the Defendant in a bathroom. *Id.* at 225. Hidden above the bathroom cabinet, police found a cellular telephone. *Id.* Also in the bathroom, police found a small quantity of methamphetamine wrapped in a dollar bill, located behind the toilet. *Id.*

Located in other areas of the house, police found a small quantify of marijuana, a glass vial containing methamphetamine, a quantity of methamphetamine in the pocket of a pair of pants, a small cloth gun case containing methamphetamine, another small baggie of methamphetamine, two sets of digital scales, drug notes, and other lower level evidence of drug dealing activity. *Id.* at 226–230. Police found a loaded .38 caliber revolver in the living room. *Id.* at 235. Police also found airline baggage receipts confirming Boatwright's trips to California, as well as other receipts indicative of an automobile trip across the western United States. *Id.* at 236–237. On cross-examination, Office DeJoode admitted that there was no forensic evidence connecting the Defendant with any of the items seized at the Boatwright residence, save his wallet. *Id.* 257–258.

#### 5. *Felipe Mendez, Jr. ("Mendez")*

Mendez took the stand on his own behalf. *Id.* at 17, 22. Mendez admitted to knowing the Defendant for three to four months before his arrest on July 8, 2004, but testified that the Defendant did not work for him. *Id.* at 65–66. Mendez was not surprised to find the Defendant at Boatwright's residence. *Id.* at 66–67. Yet, when asked, Mendez could not provide a reason why the Defendant, a resident of California, was at Boatwright's residence in Des Moines, Iowa. *Id.*

#### C. *Analysis*

In Final Jury Instruction Eleven, the jury was instructed that in order to find the Defendant guilty of conspiracy to distribute methamphetamine, they had to find

that: 1) two or more persons reached an agreement or came to an understanding to knowingly and intentionally distribute methamphetamine; 2) the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or some later time while it was still in effect; and 3) the Defendant knew the purpose of the agreement or understanding. *United States v. Alexander,* 408 F.3d 1003, 1008 (8th Cir. 2005). As to the first element, the Court and jury heard testimony from fourteen Government witnesses who provided substantial evidence that a conspiracy to distribute methamphetamine, in the quantities alleged, existed.

■ As to the remaining elements, the Court finds that, given the absence of evidence to contradict the testimony of the individuals listed above, particularly Boatwright and Officer DeJoode, a jury could reasonably rely on the testimony they heard to find the Defendant conspired with others to distribute a large quantity of methamphetamine. *See id.* ("We give significant weight to the jury credibility determination."). Viewed in the light most favorable to the Government, the jury could reasonably infer that the Defendant, while perhaps not as significant a player as his other co-defendants, did voluntarily and intentionally participate in furthering the conspiracy by carrying out instructions from Mendez, protecting Boatwright during her cross-country trips, and by his ongoing, unexplained, presence at the location where a great deal of the conspiracy's activities took place. Accordingly, Defendant's renewed motion for a judgment of acquittal is denied.

## II. MOTION FOR NEW TRIAL

### A. *Standard of Review*

■ Federal Rule of Criminal Procedure 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The District Court is granted broad discretion in passing upon motions for new trial and its decision is subject to reversal only for a clear abuse of discretion. *See United States v. Cannon,* 88 F.3d 1495, 1502 (8th Cir.1996); *United States v. Blumeyer,* 62 F.3d 1013, 1015 (8th Cir.1995). Unlike a motion pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal, the Court need not consider the evidence on a Rule 33 motion for new trial in the light most favorable to the Government. Rather, in assessing whether Defendant is entitled to a new trial on the ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *United States v. Davis,* 103 F.3d 660, 668 (8th Cir.1996); *United States v. Lanier,* 838 F.2d 281, 284–85 (8th Cir.1988) (per curiam). As the Eighth Circuit Court of Appeals explained in *United States v. Rodriguez:*

> "When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is whether he is entitled to a new trial. In assessing the defendant's right to a new trial, the court must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln,* 630 F.2d 1313, 1316 (8th Cir.1980). The court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. We will not reverse the district court's decision absent a clear and manifest abuse of discretion. *United States v. Bonadonna,* 775 F.2d 949, 957 (8th Cir.1985); *United*

*States v. Ferguson,* 776 F.2d 217, 225 (8th Cir.1985); *United States v. Bohn,* 508 F.2d 1145, 1150 (8th Cir.1975).

*United States v. Rodriguez,* 812 F.2d 414, 417 (8th Cir.1987). The Eighth Circuit has also warned, however, that the authority to grant a Rule 33 motion for new trial "should be used sparingly and with caution." *Lincoln,* 630 F.2d at 1319. Nonetheless, if the Court finds that:

> [D]espite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, [the district court] may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*United States v. Huerta–Orozco,* 272 F.3d 561, 565 (8th Cir.2001) (quoting *Lincoln,* 630 F.2d at 1319).

Again, to convict Defendant of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, it is necessary that the Government prove the following: 1) that Defendant and some other individual reached an agreement or came to an understanding to knowingly and intentionally distribute methamphetamine; 2) that the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and 3) that at the time the Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding. *See* Court's Final Jury Ins. No. 11; *United States v. Beckman,* 222 F.3d 512, 522 (8th Cir.2000) (in a conspiracy case, the government must prove there was a conspiracy with an illegal purpose, that the defendant was aware of the conspiracy, and that he knowingly became a part of it); *United States v. Robinson,* 217 F.3d 560, 564 (8th Cir.2000) (there must be evidence that the defendant entered into an agreement with at least one other person and that the agreement had as its objective a violation of law); *United States v. Mosby,* 177 F.3d 1067, 1069 (8th Cir.1999); *United States v. Bass,* 121 F.3d 1218, 1220 (8th Cir.1997).

### B. *Analysis*

At trial, the vast majority of the Government's evidence focused on the activities of Mendez, Santamaria, and the third co-defendant, Isabel Ramon–Rodriguez ("Ramon"). The Court finds that substantial evidence was presented that established the existence of a robust conspiracy to distribute methamphetamine and that the Defendant knew of the conspiracy. *See* Final Jury Instruction 13—Willful Blindness ("[A] defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. It is entirely up to you as to whether you find any deliberate closing of the eyes and the inferences to be drawn from any such evidence.") The real issue to be decided is whether the Defendant played an intentional and knowing role in that conspiracy. "Once the government establishes the existence of a drug conspiracy, only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction." *United States v. Beckman,* 222 F.3d 512, 521 (8th Cir.2000). While some references are made by other witnesses to the Defendant, the Government's case against the Defendant really rises and falls on the testimony of Boatwright. The Court, like the jury, found her testimony credible. Conversely, the Court cannot say it found Mendez credible as to almost any aspect of his testimony—the Court takes no stock in Mendez' story that he was a welder, auto dealer, and music promoter making business trips back and forth from Des Moines to California.

■ According to Boatwright's testimony, unlike Mendez and Santamaria, the

Defendant did not directly take part in actual drug trafficking. Instead, the Defendant appeared to play a subservient role, taking instructions from Mendez, conferring with Santamaria, and driving cross-country with Boatwright. Boatwright's testimony presented Mendez as the person giving orders, Santamaria as his second, and the Defendant as an omnipresent helpful shadow. The Court cannot conclude, however, that the Defendant's constant presence was passive. *See United States v. Rork*, 981 F.2d 314, 316 (8th Cir.1992) (holding that defendant's knowledge of drug deal and presence during the transaction was insufficient to support conviction for conspiracy). Rather, the Defendant played an active role in furthering the conspiracy by meeting and supervising Boatwright while in California and during their trips. The Defendant associated with Mendez and Santamaria in a city thousands of miles from his home for no other purpose, the Court can surmise, than to voluntarily aid in the distribution of methamphetamine. This is in contrast to a person who, by the mere fact of living in a neighborhood, may associate with known drug dealers who also reside in the same area or who was making deals for his own personal use. *See United States v. Dodd*, 391 F.3d 930, 934–935 (8th Cir.2004) (affirming the district court's grant of new trial where the defendant, while knowing a drug conspiracy was in place, did not have the degree of knowing involvement and cooperation necessary to sustain a guilty verdict). Here, the jury could reasonably find beyond a reasonable doubt that the Defendant transported vehicles and persons involved in the distribution of methamphetamine, at the direction of Mendez, back and forth across the country between Iowa and California. No direct evidence was offered by the Defendant to contend otherwise. Indeed, the Defendant barely raised any issue on cross examination, choosing to question the Government's witnesses rarely, if at all. The real danger to the Defendant, at trial, was to be tarred with the substantial testimonial evidence against his co-defendants. Yet, according to Boatwright, wherever the others were, so was the Defendant, doing the bidding of Mendez and otherwise constantly being in the presence of persons trafficking in methamphetamine thousands of miles from his home.

## III. CONCLUSION

The Court concludes, based upon its review of the evidence, this was sufficient to permit the jury to conclude that the Defendant not only knew of the conspiracy, but intentionally played a role in its furtherance. On the evidence presented at trial, the Court cannot conclude that a miscarriage of justice has occurred. Accordingly, the Motion for New Trial (Clerk's No. 216) is denied. Also, Defendant's renewed motion for a judgment of acquittal is denied.

IT IS SO ORDERED