# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3124

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Rogelio Preciado, also known as | * |
| Emilio Mendoza-Valencia, | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 02-3431

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Pablo Borges-Cano, also known as | * |
| Jaimie Samorano | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 02-3533

_____

United States of America,⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀Plaintiff - Appellee,⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
Humberto Sanchez, also known as⠀*
Humberto Sanchez-Hernandez,⠀⠀*
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*
⠀⠀⠀⠀⠀Defendant - Appellant.⠀*

_____

Submitted:⠀May 12, 2003

Filed:⠀July 18, 2003

_____

Before LOKEN, Chief Judge, BRIGHT and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

⠀⠀⠀Rogelio Preciado, Pablo Borges-Cano, and Humberto Sanchez were charged with possession with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and with conspiracy to do the same, in violation of 21 U.S.C. § 846. Preciado and Borges-Cano pled guilty to conspiracy and were sentenced by the district court[1] to 151 and 135 months respectively; their appeals raise sentencing issues. Sanchez was convicted by a jury

⸻⸻⸻⸻⸻⸻

⠀⠀⠀[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

on both counts and was sentenced to 121 months; he appeals on multiple grounds. We affirm.

In August 2001 Victor Lopez-Reyes, named in the indictment as a coconspirator, made arrangements with a confidential government informant for the sale of five pounds of methamphetamine. On September 7, 2001, Lopez-Reyes went to the liquor store where the informant worked to arrange the sale for later that day. Law enforcement agents established surveillance around the area, but they withdrew after they heard the deal might not take place that day. Preciado and Borges-Cano later showed up at the liquor store to make the sale, however, and the informant passed this news on to the agents. They needed time to set up surveillance again so they told the informant to tell Preciado and Borges-Cano that there would be a delay because he would have to get the money for the deal. The informant described Preciado and Borges-Cano to the agents as well as a red Nissan Sentra he had observed. Surveillance officers then located the Sentra in the parking lot of a nearby bar. They also saw Preciado and Borges-Cano walking around before getting into a black Volkswagen Jetta and driving back to the liquor store. The two waited outside the store for over an hour until the informant, following his instructions, told them he had the money and would do the deal in ten to fifteen minutes at a carwash down the street.

Preciado and Borges-Cano first drove to the carwash and then turned around and went to the bar parking lot where the red Sentra was. Agents saw Borges-Cano get out of the Volkswagen and walk up to the entrance of the bar just as Sanchez came out. The two walked right over to the Sentra and got in. Sanchez started the car, waited for Preciado to drive out of his parking spot, and then followed Preciado to the exit to the street where both cars were stopped. All three were arrested, and approximately five pounds of methamphetamine was found inside an open Coca Cola box in the back seat of the Sentra. Packaging material was found in the trunk. A surveillance officer testified that he had observed the Coca Cola box on the backseat

3

of the Sentra as it sat in the lot. The agents doing surveillance of the lot reported that no one had been seen putting anything into the car while it was parked outside the bar.

Preciado pled guilty on the first day of trial after the jury was empaneled and received a two level downward adjustment under the guidelines for acceptance of responsibility. He contends that he should have received a third level adjustment for timely acceptance because the district court should not have rejected his earlier attempt to plead guilty five days before trial. We review a decision to deny an acceptance of responsibility adjustment for clear error. See United States v. Ervasti, 201 F.3d 1029, 1043 (8th Cir. 2000).

At the time of Preciado's sentencing, § 3E1.1(b)(2) of the United States Sentencing Guidelines provided a one level downward adjustment for timely notice of an intent to plead guilty, thereby saving the government trial preparation. United States Sentencing Commission, Guidelines Manual, § 3E1.1(b)(2) (2001) [U.S.S.G.].[2] Although the government had originally agreed to recommend the full three level reduction at the time Preciado first tried to plead guilty, he was not forthcoming about his guilt and the court did not accept his plea.

"There is … no absolute right to have a guilty plea accepted. A court may reject a plea in exercise of sound judicial discretion." Santobello v. New York, 404 U.S. 257, 262 (1971) (citations omitted). Preciado was reticent to admit any wrongdoing when he first attempted to plead guilty. He shifted his version of events incrementally each time the district court indicated that it was not satisfied that there was an adequate factual basis to accept a plea. On this record the district court did

---

[2]Now, under the PROTECT Act the third level can only be granted upon a motion by the prosecutor. Pub. L. No. 108-21, § 401(g)(1)(A), 117 Stat. 650, 672 (2003) (amending U.S.S.G. § 3E1.1(b)).

4

not abuse its discretion in rejecting Preciado's plea.  See United States v. Severino, 800 F.2d 42, 45–46 (2d Cir. 1986) (district court did not abuse discretion by rejecting guilty plea where defendant's account of events minimized role in crime and called credibility into question).  Since the government was then forced to prepare for trial, Preciado's later plea did not save it this task.  We conclude there was no clear error in denying Preciado a further offense level reduction under U.S.S.G § 3E1.1(b)(2).

Borges-Cano pled guilty in advance of trial and moved at sentencing for a mitigating role adjustment under U.S.S.G. § 3B1.2, claiming he was merely a front man who facilitated deals and transported drugs for Preciado and Lopez-Reyes.  The district court denied the adjustment, finding that Borges-Cano was "more than a minor participant," and he now appeals from that denial.  Whether an adjustment is warranted under § 3B1.2 is determined by "comparing the acts of each participant in relation to the relevant conduct" and by "measuring each participant's … acts and relative culpability against the elements of the offense." United States v. Snoddy, 139 F.3d 1224, 1228 (8th Cir. 1998).  We review a determination that a defendant is not entitled to a mitigating role adjustment for clear error.  See United States v. Lopez-Arce, 267 F.3d 775, 784 (8th Cir. 2001).

The record establishes that Borges-Cano was not a minor participant in the criminal activity.  After Lopez-Reyes had arranged a sale with an undercover officer on July 16 2001, Borges-Cano delivered a half pound of methamphetamine and collected a cash payment of $3,500.  On September 7 Borges-Cano and Preciado met with a confidential informant, waited together for over an hour for the informant to collect the buy money, and were arrested with Sanchez in the process of closing the drug deal.  And it was Borges-Cano who got out of the Volkswagen to meet Sanchez at the bar and left with him and the drugs in the Sentra.  Borges-Cano was not simply a minor player, but an active participant in the conspiracy who played a significant role.  The district court did not clearly err by denying his request for a mitigating role adjustment.  See United States v. McGrady, 97 F.3d 1042, 1043 (8th Cir. 1996).

5

Sanchez raises a number of issues on appeal, and several grow out of the trial testimony of Jose Hernandez-Correa. Sanchez's theory of defense was that he bought and sold used cars for a living and that Preciado had called him about a car he had advertised and asked him to meet at the bar. Sanchez testified that while he was waiting there for Preciado, Borges-Cano asked him for a ride to the carwash. Sanchez claimed that he had had no prior association with Preciado or Borges-Cano and that someone else must have put the Coca Cola box with the drugs in his car while he was in the bar. Five days before trial Sanchez learned that the government was going to call Correa who would testify that he had seen Sanchez with Preciado before the day of the drug deal. Although he had previously been interviewed by investigators, the prosecution only learned shortly before trial that Correa had picked Sanchez from a photo lineup as someone he knew in the drug business. The prosecution informed counsel for Sanchez that Correa's testimony would link his client to Preciado. Sanchez moved for a continuance, and the court denied the motion. Correa later testified at trial that he had sold drugs for Preciado and had seen Sanchez with Preciado in a St. Paul bar in the spring of 2001, when Preciado told him that he and Sanchez were partners. Correa understood Preciado to mean that he and Sanchez sold methamphetamine together.

Sanchez argues on appeal that the court abused its discretion by denying his request for a continuance to take Correa's deposition. See United States v. Cotroneo, 89 F.3d 510, 514 (8th Cir. 1996) (standard of review). A motion for continuance should be granted if the moving party shows a "compelling reason." See id. The reason given by Sanchez for a continuance was to allow time to depose Correa, but Sanchez was not entitled to a deposition. Fed. R. Crim. P. 15 provides that courts may order depositions "to preserve testimony for trial," but the rule is not intended as a mechanism for general discovery. See United States v. Hutchings, 751 F.2d 230, 236 (8th Cir. 1984). Sanchez now argues that even without a deposition, a continuance would have helped him because his counsel would have had time to interview Correa. Sanchez did not give this reason when he asked for a continuance,

however, and his counsel in fact informed the district court that Correa's attorney had refused to "grant [him] the privilege" of speaking to her client. The government notified Sanchez that it would call Correa as soon as it learned about his potential testimony, and Sanchez did not give the district court any compelling reason for a continuance. Moreover, he had a full opportunity to cross examine Correa at trial, and he has not shown prejudice. We conclude that the district court did not abuse its discretion in denying the motion.

Sanchez claims that the district court should have excluded Correa's identification of him at trial because the photo lineup shown to him earlier was unduly suggestive and led to an irreparable mistaken identification. Because Sanchez failed to object to Correa's in court identification, we review this claim for plain error. See United States v. Goodson, 155 F.3d 963, 968 (8th Cir. 1998) (arguments not made to district court reviewed for plain error). The test is whether the earlier photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Because Correa had told investigators he had delivered drugs for Preciado, he was shown a lineup of unidentified photographs and asked whether any pictured a partner of Preciado's named Humberto Esquivel. Correa could not identify any picture as Esquivel, but he identified a photo of Sanchez as someone Preciado had introduced him to at a St. Paul bar. Sanchez argues that this procedure was unduly suggestive because Correa would have recognized him from their having been in the same jail for several months, and Correa admitted he did not recognize anyone else. We note that Correa was shown multiple photographs, no one suggested which picture he should select, and he declined to identify any photo as Esquivel, the connection that the agents were hoping to establish. We conclude that the lineup was not impermissibly suggestive and did not improperly taint the in court identification by Correa. See United States v. Johnson, 56 F.3d 947, 953–54 (8th Cir. 1995).

Sanchez next argues that the photo lineup from which Correa identified him should have been excluded at trial. It was Sanchez himself who introduced the lineup, however, in an attempt to demonstrate to the jury that it was suggestive and had unduly influenced Correa. By introducing this evidence himself, Sanchez cannot prevail on the argument that it should have been excluded by the district court. Cf. United States v. Mihm, 13 F.3d 1200, 1204 (8th Cir. 1994) (unsuccessful tactical decision waives even plain error review).

Sanchez alleges that the government did not give him adequate notice of Correa's testimony and that his testimony included a hearsay statement. We review a district court's evidentiary rulings for abuse of discretion, see United States v. Arias, 252 F.3d 973, 977 (8th Cir. 2001), and conclude there was no abuse in admitting this evidence. Rule 404(b) of the Federal Rules of Evidence requires reasonable notice of any "evidence of other crimes, wrongs, or acts" the prosecution intends to introduce. Sanchez was given notice of Correa's likely testimony as soon as the prosecution became aware of his evidence. Although it was only a few days before trial, we cannot say the notice was unreasonable under the circumstances. See United States v. Green, 275 F.3d 694, 701–02 (8th Cir. 2001) (notice received week before trial was reasonable where government provided notice same day it learned of evidence). Correa testified that he sold methamphetamine for Preciado, and he repeated Preciado's statement in the bar which identified Sanchez as a partner in his methamphetamine business. Correa's testimony about Preciado's statement was admissible under Rule 801(d)(2)(E). See Arias, 252 F.3d at 977.

Sanchez also argues that an illustrative exhibit used by the government in closing argument should have been excluded. The chart shows calls between the cellular phones of Sanchez and Preciado and which phone initiated each call. "The use of summary charts, diagrams, and other visual aids is generally permissible in the sound discretion of the trial court," United States v. Crockett, 49 F.3d 1357, 1360–61 (8th Cir. 1995), and we find no abuse of discretion here. Since the evidence tended

8

to undermine Sanchez's defense that he did not know Preciado, it was probative and not unduly prejudicial.

Sanchez also raises several issues related to attempts he made to have Preciado and Borges-Cano testify in his defense. Sanchez attempted to call Preciado and Borges-Cano at trial to support his theory that he was at the bar to show a car. Sanchez hoped to have his codefendants testify that they were responsible for the deal and had tricked him into giving them a ride by feigning interest in purchasing his car. Counsel for both men responded to Sanchez's subpoenas by appearing in the district court to state that each client would claim his Fifth Amendment right against self incrimination. Sanchez argues that the district court erred by excusing Preciado and Borges-Cano without conducting further inquiry into the basis of their claims of privilege.

Before excusing a witness on the basis of the Fifth Amendment privilege, a district court should inquire whether his "responses to the proposed line of questioning would subject [him] to possible criminal prosecution." United States v. Washington, 318 F.3d 845, 856 (8th Cir. 2003). That inquiry can be satisfied by statements from counsel for the prospective witness. See United States v. Warfield, 97 F.3d 1014, 1019–20 (8th Cir. 1996); United States v. Swanson, 9 F.3d 1354, 1359 (8th Cir. 1993). Here, the attorneys for Preciado and Borges-Cano appeared and were questioned by the district court. The court also gave Sanchez the opportunity to question them and probe the basis of the asserted privilege. That basis is apparent here where neither man had yet been sentenced. See Mitchell v. United States, 526 U.S. 314, 326 (1999) (defendant's privilege against self incrimination continues to sentencing). A defendant's role in the offense is always relevant at sentencing, and that was especially true here since Borges-Cano was seeking a mitigating role adjustment and Preciado wanted to defend against the aggravating role enhancement sought by the government. The district court did not abuse its discretion by permitting Preciado and Borges-Cano to assert their privilege against self incrimination. See Washington, 318 F.3d at 856 (standard of review).

9

Sanchez also wanted to introduce statements Preciado made during his guilty plea.[3] The district court heard argument from counsel on this issue before excluding the evidence, but Sanchez asserts that a further hearing should have been held to determine whether the statements were admissible as an exception to the hearsay rule Fed. R. Evid. 804(b)(1). Testimony given at another proceeding by an unavailable witness may be admitted if "the party against whom the testimony is now offered … had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The government's motive at Preciado's change of plea hearing was to ensure that the plea was knowing, voluntary, and intelligent and that there was an adequate factual basis to accept it—it had no need or motive to develop testimony about Sanchez. United States v. Powell, 894 F.2d 895, 901 (7th Cir. 1990); United States v. Lowell, 649 F.2d 950, 965 (3d Cir. 1981). Preciado's statements during his change of plea hearing do not fit the hearsay exception cited by Sanchez, and the district court did not abuse its discretion in excluding them.

Sanchez moved for a new trial after his conviction on the ground that Preciado would now testify if subpoenaed. Sanchez's counsel asserted in an affidavit that Preciado had told him after he was sentenced that Sanchez had nothing to do with the drug deal and that the two had never met before they were arrested. Preciado refused to have his statement recorded, however, or to sign an affidavit. He indicated to counsel that he was reluctant to do more because he did not trust "anyone working for the government." In ruling on the motion for new trial, the district court concluded that the testimony of a convicted codefendant like Preciado "would not be sufficiently

---

[3]Sanchez also attempted unsuccessfully to introduce other out of court statements by Preciado through Lisa Hill, a student assistant, and reference to that is made in the fact section of Sanchez's brief. The brief does not argue that it should have been admitted, however, and the issue is thus waived. See United States v. Echols, 144 F.3d 584, 585 n.2 (8th Cir. 1998). Such an argument would not have been successful in any event because Rule 804(b)(3) requires "corroborating circumstances" clearly indicating the trustworthiness of the declarant's statements, and none have been shown in respect to Preciado.

more credible than the testimony received at trial to overturn the jury's determination" and denied the motion.[4] Before learning about the court's ruling, Sanchez moved for an evidentiary hearing on his motion. The district court denied this request as moot since it had already denied the underlying motion.

Sanchez now claims that the district court abused its discretion by denying his motion for an evidentiary hearing. See United States v. Dogskin, 265 F.3d 682, 687 (8th Cir. 2001) (standard of review). By the time Sanchez made that motion, the district court had already denied the motion for new trial because it had concluded that Preciado's testimony would not likely lead to acquittal. See United States v. Zuazo, 243 F.3d 428, 431 (8th Cir. 2001) (motion for new trial on basis of newly discovered evidence only granted where new evidence is likely to lead to acquittal). The district court has wide discretion in this type of post trial motion and it need only grant an evidentiary hearing in exceptional circumstances. See Zuazo, 243 F.3d at 432; Dogskin, 265 F.3d at 687. While Sanchez hoped that Preciado would exculpate him, the district court had had the opportunity to observe Preciado testify at his two change of plea hearings. The court also knew that Preciado had claimed his privilege against self incrimination when called at trial and had refused to give a recorded statement or an affidavit. A district court is in the best position to weigh the evidence and evaluate witness credibility, see United States v. Luna, 265 F.3d 649, 651 (8th Cir. 2001), and in these circumstances it did not abuse its discretion by denying the motion for an evidentiary hearing.

---

[4]The dissent suggests that this reference to a convicted codefendant's testimony "seemingly recognizes the unreliability of Correa's testimony," but the court was specifically addressing Preciado's testimony. There was also considerable evidence at trial corroborating Correa. For example, the surveillance evidence was very damaging for Sanchez and for his own testimony at trial, as was the evidence showing extensive calls between Preciado and Sanchez (and showing calls made from each of their phones to the same numbers in California and Mexico).

11

Finally, Sanchez argues that the "cumulative effect of the trial court's errors" requires reversal. Because Sanchez has not established that the district court committed any errors, this argument need not be discussed.

For these reasons, the judgments of the district court are affirmed.

BRIGHT, Circuit Judge, concurring in part, dissenting in part.

I concur in the affirmance of the convictions and sentences of Rogelio Preciado and Pablo Borges-Cano. I dissent from the opinion affirming the conviction of Humberto Sanchez. I would remand to the district court for a hearing on Sanchez's motion for a new trial on grounds that Preciado will testify Sanchez had nothing to do with the drug transaction in question.

In this case, the prosecution relied on the testimony of a convicted felon serving jail time, Jose Hernandez-Correa, to link Sanchez to Preciado's criminal enterprises. This sort of testimony is highly questionable. In my view, little corroboration otherwise existed for the conviction. Sanchez explained his relationship with Preciado as relating to a possible sale of a used automobile.

Sanchez presented evidence that Preciado will testify to their relationship. In the motion for new trial, Sanchez's counsel presented the court an affidavit stating the following:

I am a CJA panel attorney appointed to defend Humberto Sanchez.

Regelio Preciado, a.k.a. Emilio Mendoza-Valencia, was a co-defendant of Mr. Sanchez and was sentenced before the [H]onorable Judge Doty August 12, 2002.

In the afternoon of August 12, 2002 I had a telephone conversation with legal counsel for Mr. Preciado, attorney Steven Griggsby. During that

12

phone conversation I explained my desire to question his client about his relationship to Humberto Sanchez and Mr. Sanchez's involv[ment] in the drug dealings alleged in the instant case. Mr. Griggsby gave me permission to speak with his client.

On August 15, 2002 I had a meeting with Mr. Preciado at the Sherburne County Jail. In general, Mr. Preciado was angry about the sentence he received and he stated his distrust of anyone working for the government (including myself). He was also angry that Mr. Sanchez was charged in this case because he was not involved. During our meeting Mr. Preciado made the following relevant statements:

a.    "I never met him [(Humberto Sanchez)] before we were arrested [on September 7, 2001]."
b.    "He [(Humberto Sanchez)] had nothing to do with the drugs."
c.    "He [(Humberto Sanchez)] was not part of any conspiracy."
d.    "This is not right. That guy [(Humberto Sanchez)] had nothing to do with this case."
e.    "I do not trust your government. Your government is screwed up - it screwed me, it screws many people, and it is screwed up for that man [(Humberto Sanchez)] to be in this case. I take responsibility for what I done. Why does he [(Humberto Sanchez)] have to go to jail when he had done nothing."
f.    "That snitch was a liar to say that we [(Preciado & Sanchez)] were together. I never saw him [(Humberto Sanchez)] before this thing. It is all a lie. That man is a murderer in Mexico and here - everybody knows that. How could your government use him and protect him?" (Referring to the trial testimony of Jose Hernandez-Correa who testified that he saw Preciado and Sanchez together in March of 2001.)

I asked Mr. Preciado if he would be willing to write a statement or allow me to record him discussing Mr. Sanchez's involvement in this case. He said that he wanted to help Mr. Sanchez but that he was suspicious of my reasons for asking him to write a statement or to record him. He stated that he would have to be brought into court before he would repeat his statements.

13

App. at 42.

In denying the motion for a new trial, the district court stated: "Thus, defendant proposes to contradict the government's witness through the testimony of the co-defendant. The testimony of a convicted co-defendant would not be sufficiently more credible than the testimony received at trial to overturn the jury's determination, or to make acquittal upon retrial probable." App. 46. This statement seemingly recognizes the unreliability of Correa's testimony on which the conviction rests. However, Preciado's testimony has, as yet, not been heard. Until Preciado actually testifies and corroborating evidence, if any, is presented that testimony cannot be tested as to reliability.

Thus, I would vacate the district court's denial for a new trial and remand to the district court for a full evidentiary hearing to determine whether Sanchez is entitled to a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

14