# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1793

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States District |
| | * | Court for the Northern District of Iowa. |
| Alfredo Luna, also known as Bear, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: August 21, 2001

Filed: September 7, 2001

_____

Before RILEY, ROSS, and BEAM, Circuit Judges.

_____

ROSS, Circuit Judge.

Alfredo Luna appeals from a judgment of the district court[1] entered upon a jury verdict finding him guilty of a drug conspiracy. We affirm.

Luna was charged with conspiracy to distribute more than 1,000 grams of methamphetamine and 500 grams of cocaine, in violation of 21 U.S.C. § 846, and with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). At trial, among other evidence, the government

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

presented the testimony of several co-conspirators, who testified pursuant to plea agreements. In particular, Matt Miller testified that he had received twenty pounds of methamphetamine and three or four pounds of cocaine from Luna. Miller also testified that Luna had an AR 15 rifle, which he threatened to use if Miller ever "snitched," and during several drug transactions Luna had pointed a .9mm pistol with a laser sight at him. Scott Windles testified that Luna had supplied him with five to eight pounds of methamphetamine. In addition, Windles testified that he saw an AR 15 rifle at Luna's home and that Luna had pointed a .9mm pistol at him during drug transactions. Luna presented several witnesses and testified in his defense. After a three-day trial, the jury convicted Luna of the conspiracy charge, but acquitted him of the § 924(c) weapons charge. The district court denied his Fed. R. Crim. P. 33 motion for a new trial.

At sentencing, the district court found that based on the trial testimony Luna was responsible for more than 10,000 but less than 30,000 kilograms of marijuana equivalent, resulting in a base offense level of 36. The court also imposed a two-level enhancement for possessing a dangerous weapon under U.S.S.G. § 2D1.1(b). Based on a total offense level of 38 and criminal history category of II, the sentencing range was 262 to 327 months. The district court sentenced Luna to 262 months.

Luna first argues that the district court abused its discretion in denying his Rule 33 motion for a new trial, asserting primarily that the government's witnesses lacked credibility. Under Rule 33, a district court may grant a new trial "'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000) (quoting United States v. Brown, 956 F.2d 782, 786 (8th Cir. 1992)). "In making this determination, the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses." Id. at 783-84. We will affirm the denial of a new trial unless it was "a clear and manifest abuse of discretion." Id. at 784. Although, as Luna notes, "many of the government witnesses were involved in illegal activity and testified in return for

leniency," contrary to his assertion, "this does not render their testimony so suspicious that the district court abused it's discretion in failing to rule that a miscarriage of justice may have occurred." Brown, 956 F.2d at 786. In ruling on the Rule 33 motion, the district court was in the best position to evaluate the witnesses' credibility and weigh the evidence. See United States v. Misle Bus & Equip. Co., 967 F.2d 1227, 1232 (8th Cir. 1992). After reviewing the record, we find the court did not abuse its discretion in denying Luna's motion for a new trial.

Luna next challenges his sentence. He argues that the court erred in finding that he was accountable for more than 10,000 kilograms of marijuana equivalent and for imposing the § 2D1.1(b) two-level weapons enhancement. We review the district court's quantity and weapons findings for clear error. See United States v. Calderin-Rodriguez, 244 F.3d 977, 987 (8th Cir. 2001). Luna concedes that a sentencing court "may consider relevant information . . . provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). However, noting that the court's findings were primarily based on the testimony of Windles and Miller, Luna argues since the jury must have disbelieved their testimony regarding the § 924(c) weapons charge, their testimony regarding quantity and weapons was unreliable. His argument is without merit. "Juries can return inconsistent verdicts." United States v. Madrid, 224 F.3d 757, 762 (8th Cir. 2000). "'A jury may acquit a defendant as to one or more charges for any number of reasons, including an inclination to be merciful, and yet come to the reasonable conclusion that the defendant was guilty of other related charges.'" Id. (quoting United States v. Whatley, 133 F.3d 601, 606 (8th Cir.), cert. denied, 524 U.S. 940 (1998)). It is well established that "even acquitted conduct can be considered when determining a sentence under the Sentencing Guidelines, so long as that conduct has been proved, . . . by a preponderance of the evidence." Id. It is also well established that in sentencing matters "a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." United States v. Causor-Serrato, 234 F.3d 384, 390 (8th Cir. 2000), cert. denied, 121 S. Ct. 2229 (2001).

In this case, we have no basis to reverse the district court's findings. To the contrary, "it is clear from the sentencing transcript that those determinations were cautious and well-supported." Calderin-Rodriguez, 244 F.3d at 988. At the scheduled sentencing, the court announced because several months had passed since trial and that the major sentencing issues "turned on the credibility of a couple of trial witnesses," it would postpone sentencing until it had the opportunity to review the trial transcript. It was only after reading and re-reading the relevant direct testimony twice and the cross-examination three times that the district court made its determinations.

In finding that Luna was responsible for between 10,000 and 30,000 kilograms of marijuana equivalent, the court noted that Miller and Windles had testified to "conservative estimates of drug quantity" and further noted that even if their estimates were cut in half, the quantity of drugs would still result in a base offense level of 36. In this case, "the district court acted well within its authority by reasonably estimating drug quantity predicated on its assessment of the evidence." Causor-Serrato, 234 F.3d at 389. Likewise, the district court did not clearly err in imposing the two-level § 2D1.1(b) weapons enhancement, which as the court noted,"should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. In assessing Miller's and Windles' credibility, the court noted their testimony that Luna had an AR 15 rifle and .9 mm pistol was corroborated by the testimony of two law enforcement officers.[2] Police Officer Mike Stark testified that when he investigated a March 1998 peace disturbance call, he found Luna and several co-conspirators shooting guns along a road. Luna had three semi-automatic guns in his hands, including a .9mm pistol. Stark also saw a laser sight kit, which Luna admitted purchasing at a sporting goods store. Deputy Sheriff Dave Drew testified that during a November 1998 warrant search of Luna's home officers found an AR 15 rifle, two pistols, and a magazine clip. Although Luna asserts

---

[2]We do not mean to suggest that corroboration is always necessary. See Calderin-Rodriguez, 244 F.3d at 977.

that he used the weapons for sporting purposes, the district court chose to credit the testimony of Miller and Windles that Luna had used the weapons in connection with the drug conspiracy, and we have no reason to disturb that finding.

Accordingly, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.