# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1900

———————

United States of America,                    *
                                             *
                    Plaintiff-Appellee,      *
                                             *    Appeal from the United States
          v.                                 *    District Court for the
                                             *    Northern District of Iowa.
Christopher Mark Davis,                       *
                                             *        [TO BE PUBLISHED]
                    Defendant-Appellant.      *

———————

Submitted:  December 14, 2004
      Filed:  February 11, 2005

———————

Before WOLLMAN, LAY, and COLLOTON, Circuit Judges.

———————

PER CURIAM.

From 1998 to October of 2002, Christopher Davis was involved in the distribution of methamphetamine with David Hinders and Jesus "Jay" Gonzalez. In October of 2002, Davis chose to cooperate with law enforcement authorities. Before his indictment for distribution and conspiracy, Davis gave a post-<u>Miranda</u> statement to federal agents in North Dakota that implicated himself, Hinders, and Gonzalez in drug trafficking. The three of them were indicted on December 17, 2002, for conspiracy to distribute methamphetamine.

In January of 2003, Davis was arraigned on the indictment for conspiracy to distribute methamphetamine. After Davis's arraignment, a detention hearing was scheduled. Assistant United States Attorney Jamie Bowers (AUSA Bowers) feared that if Davis were released as a result of the detention hearing, he would return to drug abuse and potentially disappear, thus mitigating his potential value as a witness. Before the beginning of the detention hearing, AUSA Bowers told Davis and his lawyer that if they wished to go forward with the detention hearing, he would view their participation as non-cooperation. As a result of AUSA Bowers's statement, Davis believed that if he went forward with the detention hearing, the government would not file a United States Sentencing Guidelines (U.S.S.G.) § 5K1.1 motion for a downward departure based upon substantial assistance on Davis's behalf. Davis chose not to have a detention hearing.

In March of 2003, Davis proffered information about his activities. Bowers was particularly interested in any information Davis could give about Gonzalez and Hinders. Although Davis and his lawyer were apprehensive about revealing information about Gonzalez and Hinders (because Davis was also involved in their activities), Davis eventually provided information in hope of receiving a downward departure for substantial assistance. On March 26, 2003, Davis signed a plea agreement. Paragraph nine of the plea agreement stated that:

> Nothing in this agreement requires the government to accept any cooperation or assistance that the defendant may offer or propose. The decision whether and how to use any information and/or cooperation that the defendant provides (if at all) is in the exclusive discretion of the United States Attorney's Office.

Paragraph fifteen of the plea agreement stated that:

> It is understood and agreed that no motion for downward departure shall be made, under any circumstances, unless the defendant's cooperation is deemed "substantial" by the United States Attorney's Office and

defendant has fully complied with all provisions of this plea agreement. The United States has made no promise, implied or otherwise, that a departure motion will be made or that defendant will be granted a "departure" for "substantial assistance." Further, no promise has been made that a motion will be made for departure even if defendant complies with the terms of this agreement in all respects, but has not, in the assessment of the United States Attorney's Office, provided "substantial assistance."

Both AUSA Bowers and Davis signed the plea agreement. After its signing, Davis requested a detention hearing so he could be released to Belcourt, North Dakota, in order to cooperate with an officer there. Although AUSA Bowers remained opposed to his release because he feared that Davis would return to drug abuse or disappear, AUSA Bowers told the district judge that Davis's request for a detention hearing would not affect whether or not the U.S. Attorney's Office would offer a motion for substantial assistance.

Davis pled guilty in July of 2003. His sentencing hearing was scheduled for October 17, 2003. Prior to the sentencing date, both parties assumed that Davis's criminal history would not make him eligible for "safety valve" relief under U.S.S.G. § 5C1.2. However, once the final draft of Davis's Presentence Report (PSR) was revealed, Davis and AUSA Bowers discovered that Davis was in fact "safety valve" eligible. His sentence would thus be lower than what was originally expected. In lieu of the lower sentence, AUSA Bowers made a motion for upward departure pursuant to U.S.S.G. § 4A1.3, which was denied at sentencing by the district court.

At the sentencing hearing, AUSA Bowers did not file a motion for a downward departure based upon substantial assistance. Davis filed a motion to compel the government to file a § 5K1.1 motion for substantial assistance. Davis argued that AUSA Bowers would have filed a motion for substantial assistance, but refused to do so because Bowers was opposed to Davis's request for a detention hearing. Davis also believed that AUSA Bowers refused to file a motion for

substantial assistance after he discovered that Davis was eligible for "safety valve" relief. Davis argued that AUSA Bowers acted in bad faith by refusing to file a motion for substantial assistance, and claimed that the information he gave federal officers was in fact substantially helpful in getting Gonzalez and Hinders to plead guilty to criminal charges.

On October 28, 2003, AUSA Bowers filed the Government's Resistance to Defendant's Motion to Compel Filing of a § 5K1.1 Motion. The government argued that an evidentiary hearing and discovery on this issue was not justified because Davis did not make a substantial threshold showing that AUSA Bowers's refusal to file a substantial assistance motion was motivated by bad faith. AUSA Bowers stated that Davis's assistance, although minimally helpful and corroborative, did not constitute substantial assistance. AUSA Bowers also argued that the information given by Davis was untimely–by the time Davis proffered his statements, information from other sources was enough to force Gonzalez and Hinders to plead guilty.

Over the government's objection, the district court[1] found that Davis was entitled to limited discovery on the issue of whether the government acted in bad faith by refusing to file a substantial assistance motion. The district court held seven hearings on the issue. The district court ordered the government to produce transcripts of testimony from individuals which led to the indictment of Gonzalez and Hinders, and also ordered the government to provide factual information so it could determine the extent and value of the information the government received from other sources on Hinders and Gonzalez. The court conducted an in camera review of these materials.

---

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

In February of 2004, after reviewing the information, the district court denied Davis's motion to compel the government to file a substantial assistance motion. The district court found that the information supplied by the government showed that all of the information used to prosecute Hinders and Gonzalez was in the government's possession prior to Davis's post-<u>Miranda</u> statement in October of 2002. Davis renewed his motion at his sentencing hearing in April of 2004, but the district court again denied the motion. Davis was sentenced to eighty-seven months in prison. On appeal, Davis argues that the district court should have held an evidentiary hearing on whether the government acted in bad faith, and whether his assistance should be deemed "substantial."

"Absent a motion by the government, a district court generally lacks the authority to grant a downward departure based on a defendant's substantial assistance." <u>United States v. Wolf</u>, 270 F.3d 1188, 1190 (8th Cir. 2001). If the government expressly reserves discretion through a plea agreement or other instrument, courts "will perform only a limited review of the decision not to file a motion for downward departure for substantial assistance." <u>United States v. Hardy</u>, 325 F.3d 994, 996 (8th Cir. 2003).

The exception to the otherwise broad discretion of the government to file a motion for substantial assistance is triggered when the government's refusal was "irrational, in bad faith, or based on an unconstitutional motive." <u>United States v. Licona-Lopez</u>, 163 F.3d 1040, 1042 (8th Cir. 1998). In order to show that the government's refusal was irrational, in bad faith, or based upon an unconstitutional motive, the defendant must make a "substantial threshold showing"–Davis must present evidence tending to show that the decision in the case was not rationally related to a legitimate government interest. <u>Wade v. United States</u>, 504 U.S. 181, 186 (1992); <u>United States v. Romsey</u>, 975 F.2d 556, 558 (8th Cir. 1992). After a substantial threshold showing of irrationality, bad faith, or unconstitutionality is made, the defendant is entitled to discovery or an evidentiary hearing. See <u>Wade</u>, 504

U.S. at 186 ("[A] defendant has no right to discovery or an evidentiary hearing unless he makes a 'substantial threshold showing.'").

In the instant case, we find that assuming Davis made a sufficient threshold showing to justify the limited discovery ordered by the district court, the record at this stage of the proceedings does not show that Davis made a substantial threshold showing of bad faith, unconstitutional motives, or irrationality. The plea agreement between the government and Davis made no guarantee that a motion for substantial assistance would be filed and explicitly stated that the nature of Davis's assistance would be determined after all the evidence was gathered, considered, and evaluated by the United States Attorney's Office. Although AUSA Bowers informed Davis that relevant information given by him *may* be considered substantial assistance, AUSA Bowers also made no guarantee that a motion for substantial assistance would be filed. There is also no indication that the government refused to file a motion for substantial assistance because Davis requested a detention hearing or because Davis was eligible for safety-valve relief.

This conclusion is bolstered by the fact that the district court granted a discovery order to determine whether or not AUSA Bowers acted in bad faith; the district court also reviewed the government's information to determine whether Davis's testimony constituted substantial assistance.[2] The government provided the district court with the information in its possession prior to Davis's statements as well as the testimony of AUSA Bowers, and the district court conducted an in camera

_____

[2]We also note that once the defendant makes a substantial threshold showing, the defendant is entitled to an evidentiary hearing *or* discovery. As Wade demonstrates, a defendant must make a substantial threshold showing of bad faith, unconstitutional motives, or irrationality. Wade, 504 U.S. at 186. Once this threshold finding is made, however, the defendant is entitled to discovery *or* an evidentiary hearing. Id. The type of discovery granted or the extent of the evidentiary hearing is within the discretion of the district court.

review of the materials. Based on the information given by the government, the district court found that the information given by Davis was duplicative, untimely, and not substantial.

As such, it was the nature of Davis's testimony, not the bad faith or irrationality of the government, that led to the finding that Davis's testimony was not substantial. Given that the information Davis provided was untimely, duplicative, and the government did not waver from its position that it retained the sole discretion to determine whether Davis's assistance constituted substantial assistance, we find that Davis is not entitled to an evidentiary hearing regarding a motion for substantial assistance, or an order compelling the government to file such a motion.

The ruling of the district court is AFFIRMED.

COLLOTON, Circuit Judge, concurring.

I concur in the opinion of the court on the understanding that when the opinion refers to a potential showing of "bad faith" by the government that might justify discovery or an order compelling a substantial-assistance motion, *ante*, at 5-6, the court means nothing more than a showing of an "unconstitutional motive" or a decision "not rationally related to any legitimate government end," as described by the Supreme Court in *Wade v. United States*, 504 U.S. 181, 185-86 (1992). Although the petitioner in *Wade* asserted that the government acted "in bad faith" when it refused to file a substantial-assistance motion, his claim was based on an allegation that the decision was not "rationally related to any legitimate state objective," and the Supreme Court responded only by inquiring whether the government's decision was "rationally related to any legitimate Government end." *Id*. at 186. Our court recently clarified that "bad faith" is not an independent constitutional standard to be applied in this context. *United States v. Moeller*, 383 F.3d 710, 712-13 (8th Cir. 2004).

While our court sometimes has referred to "bad faith" as a standard applicable in reviewing the government's refusal to file a substantial-assistance motion, *e.g.*, *United States v. Licona-Lopez*, 163 F.3d 1040, 1042 (8th Cir. 1998), my own view is that it would be best to discontinue the use of this phraseology in light of *Moeller*'s clarification of *Wade*. By adding "bad faith" to the discussion of constitutional standards set by the Supreme Court, we risk confusing lawyers and judges who must apply the standards that govern this type of motion.

_____