# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2056

_____

United States of America

*Plaintiff - Appellee*

v.

Martin Thomas Lawrence

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 13, 2017
Filed: April 14, 2017

_____

Before WOLLMAN, MURPHY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury found Martin Lawrence guilty of conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, and attempt to obstruct justice. The district court[1] sentenced Lawrence to 300 months'

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

imprisonment. Lawrence appeals, arguing the district court improperly calculated the drug quantity attributable to him.[2] We affirm.

I.

In July 2015, Lawrence was indicted for conspiracy to distribute at least 500 grams of a mixture or substance containing methamphetamine and 50 grams of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and possession with intent to distribute at least five grams of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). In October 2015, the Government filed a superseding indictment, adding a charge for attempt to obstruct justice, in violation of 18 U.S.C. §§ 1512(b)(1), 1512(b)(2)(A), and 1512(b)(2)(C). Lawrence proceeded to trial and a jury returned a guilty verdict on all three charges.

At trial, the Government presented testimony regarding the drug quantity attributable to Lawrence, including testimony from coconspirators and from law enforcement officers involved in the investigation. Testimony from officers described a number of controlled buys from Lawrence and Kevin Ridler, a coconspirator. During a controlled buy on October 1, 2013, Ridler sold 2.54 grams of actual methamphetamine. During two controlled buys, on October 13 and October 24, 2014, Lawrence sold 25.98 grams of actual methamphetamine and 36.45 grams of actual methamphetamine, respectively. Additionally, on October 11, 2013, officers executed a search warrant at Ridler's residence and seized 28 grams of methamphetamine mixture.

---

[2]On appeal, Lawrence also asserts a claim for ineffective assistance of trial counsel. We decline to consider this claim on direct appeal. See United States v. Ramirez-Hernandez, 449 F.3d 824, 826–27 (8th Cir. 2006) (noting that ineffective-assistance claims should be raised in collateral proceedings).

Officers also testified regarding methamphetamine seized from Troy Lawrence, another coconspirator. On July 12, 2014, Troy Lawrence was stopped for a traffic violation and officers seized 6.56 grams of ice methamphetamine. On September 12, 2014, Troy Lawrence was involved in a traffic accident. Because the vehicle did not have insurance, officers impounded the car and, during an inventory search, found 23.29 grams of actual methamphetamine and 4.83 grams of methamphetamine mixture.

Finally, officers testified regarding a traffic stop of Mark Fuehrer, a third coconspirator, on January 11, 2015. During the traffic stop, officers seized 25.58 grams of actual methamphetamine.

Ridler also testified at trial. Ridler had participated with law enforcement in the controlled buys from Lawrence. Ridler described his past drug use and his relationship with Lawrence. Specifically, Ridler testified he obtained ice methamphetamine from Lawrence for three to four years. Ridler testified he bought ice methamphetamine from Lawrence at least 20 to 35 times, beginning with smaller quantities of a gram or two and increasing to as much as one ounce at a time. Ridler stated that he distributed ice methamphetamine for one and a half to two years and regularly used 0.5 to one gram per day during that period.

Finally, Carrie Maskewit, Troy Lawrence's girlfriend, also testified at trial. Maskewit testified that Lawrence was Troy Lawrence's supplier for ice methamphetamine. Maskewit stated that Lawrence obtained methamphetamine from "Rusty" in Omaha, Nebraska. Maskewit also stated that she had observed Lawrence with half-full gallon-sized plastic Ziploc bags of ice methamphetamine. An investigator later testified that this was consistent with a pound of ice methamphetamine.

Following Lawrence's conviction, the district court held two sentencing hearings. At the first hearing, on January 14, 2016, the court heard testimony from Daniel Grother, who had known Lawrence for a number of years and had bought a gram of methamphetamine from Lawrence on approximately six occasions. Grother testified that he had traveled with Lawrence to Omaha at least ten times in March and April 2015. During those trips, Grother stated, Lawrence would stop at Rusty's home, where Grother observed drug activity between Lawrence and Rusty. Grother testified that over the course of those trips, he believed he observed Lawrence in possession of three to four pounds of ice methamphetamine.

Based on Grother's testimony, the PSR attributed 1.3608 kilograms of methamphetamine to Lawrence. The PSR also attributed 424.4 grams of marijuana to Lawrence, based on marijuana seized during a search of Lawrence's home on January 27, 2015. Finally, the PSR attributed 42.52 grams of cocaine base to Lawrence, based on a report to law enforcement by a man to whom Lawrence had sold that cocaine base. The PSR attributed a total of 27,368.26 kilograms of marijuana equivalency to Lawrence, resulting in a base offense level of 34. See U.S. Sentencing Guidelines § 2D1.1(c)(3). The PSR also added a two-level enhancement based on evidence that Lawrence had attempted to obstruct justice by persuading his girlfriend to avoid being subpoenaed. Based on a total offense level of 36 and a criminal history category of IV, the advisory guidelines sentencing range was 262–327 months' imprisonment.

The Government also calculated a total offense level of 36 but was more conservative in its drug-quantity calculation. Noting concerns regarding Grother's credibility, the Government attributed to Lawrence only one pound of ice methamphetamine based on Grother's testimony. The Government calculated a total drug quantity attributable to Lawrence of 23,969.28 kilograms of marijuana equivalency. In addition to the pound of ice methamphetamine based on Grother's testimony, this calculation relied on the drugs seized during controlled buys from

Ridler and Lawrence, the search of Ridler's home, the traffic stop and accident involving Troy Lawrence, the traffic stop of Mark Fuehrer, the search of Lawrence's home, and the trial testimony of Ridler and Maskewit.

At the second sentencing hearing, on April 14, 2016, the district court accepted the Government's drug-quantity calculation. Lawrence made a number of objections at the hearing, including generalized objections to the scoring of drug quantity in the PSR, reliance on Grother's testimony in the drug-quantity calculation, and reliance on drugs seized outside the time frame of the conspiracy. Over Lawrence's objections, the court found that the Government had met its burden of establishing drug quantity by a preponderance of the evidence. The court noted that the findings would be the same even if Lawrence's objections to the PSR were sustained. The court also noted the credibility concerns regarding Grother but concluded that, though Grother's testimony may have been embellished in some respects, it was generally credible. Specifically, the court explained that credibility concerns were adequately addressed by the Government's calculation, which included only one pound of ice methamphetamine based on Grother's testimony rather than the three or four pounds to which he testified.

The court sentenced Lawrence to 300 months' imprisonment for conspiracy to distribute methamphetamine, 300 months' imprisonment for possession with intent to distribute methamphetamine, and 240 months' imprisonment for attempt to obstruct justice, all to run concurrently. Lawrence appeals, arguing the court made three errors at sentencing: (1) relying on objected-to facts in the PSR; (2) considering drug quantity from acts after the end of the conspiracy; and (3) attributing any quantity of drugs to Lawrence based on Grother's testimony.

II.

We review de novo the district court's application of the sentencing guidelines. United States v. Miller, 511 F.3d 821, 823 (8th Cir. 2008). "The district court's drug quantity and identity determinations are factual findings, which we review 'for clear error, applying the preponderance-of-the-evidence standard.'" United States v. Walker, 688 F.3d 416, 420 (8th Cir. 2012) (quoting United States v. Turner, 603 F.3d 468, 471 (8th Cir. 2010)). "The district court's 'factual determinations will stand unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made.'" Id. at 420–21 (quoting Miller, 511 F.3d at 823).

A.

Lawrence argues the district court relied on objected-to facts in the PSR. Specifically, Lawrence argues the only evidence introduced at sentencing was Grother's testimony. Beyond that, Lawrence contends, the court relied on statements in the PSR.

"Sentencing courts have 'wide discretion at sentencing as to the kind of information considered or its source.'" United States v. Rodriguez-Ramos, 663 F.3d 356, 364 (8th Cir. 2011) (quoting United States v. Pratt, 553 F.3d 1165, 1170 (8th Cir. 2009)). Information the court can consider at sentencing includes evidence produced at trial. See United States v. Wintermute, 443 F.3d 993, 1005 (8th Cir. 2006). The court cannot, however, rely on objected-to facts contained in a PSR. See id.

In this case, the district court did not rely on objected-to facts in the PSR. Rather, acknowledging those objections, the court stated:

> I'm going to overrule all of the – actually, all of the objections by the defense with regard to drug quantity. Some of the objections I don't think preserve anything because they're general. Other objections, even if I were to sustain them – but I didn't find a basis to sustain any of the objections – would have no impact on drug quantity, and those that would have an impact on drug quantity I'm able to rely on the trial testimony and the evidence in the case to make my findings.

The court thus indicated that its findings were not based on objected-to facts in the PSR but on trial testimony and evidence.

The court also addressed the differing drug-quantity calculations presented at sentencing. Acknowledging that the PSR found 27,368.26 kilograms of marijuana equivalency and the Government found 23,969.28 kilograms of marijuana equivalency, the court stated:

> They're both reasonable, but I'm going to go with the more conservative approach set out by the Government and I agree with the Government's analysis of why the transcript and the trial testimony supports that drug quantity contained in their brief and I'm just going to adopt that as all of my findings of fact.

Thus, though Lawrence objected to the PSR, the relevant responsive evidence had already been produced at trial, which the Government relied on to meet its burden regarding drug quantity at sentencing. As a result, the court did not improperly rely on objected-to facts in the PSR in imposing Lawrence's sentence.

## B.

Second, Lawrence argues the district court erred in considering acts outside the scope of the conspiracy in its drug-quantity calculation. Specifically, Lawrence contends that because the conspiracy for which he was convicted ended on January

27, 2015, Maskewit's testimony regarding drug activity in the summer of 2015 and Grother's testimony regarding drug activity in March and April 2015 could not be considered relevant conduct at sentencing.

Section 1B1.3(a) of the Guidelines instructs sentencing courts to consider relevant conduct when determining a defendant's base offense level. Relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. Sentencing Guidelines § 1B1.3(a)(2). "In drug conspiracies, the district court may consider amounts from other drug transactions, provided the other dealings are part of the same course of conduct or scheme." United States v. Bieri, 21 F.3d 811, 817 (8th Cir. 1994). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n.5(B)(i). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other." Id. § 1B1.3 cmt. n.5(B)(ii). Courts consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. . . . The nature of the offenses may also be a relevant consideration." Id.

The district court heard testimony that Lawrence traveled to Omaha to obtain methamphetamine during the conspiracy, from September 2013 through January 27, 2015. At trial, Maskewit testified that Lawrence brought methamphetamine back from Omaha in the summer of 2015. At sentencing, Grother testified that he traveled to Omaha with Lawrence a number of times in March and April 2015, during which trips Lawrence obtained methamphetamine. Lawrence's conduct after the end of the time frame of the charged conspiracy largely remained the same as his conduct during the conspiracy: Lawrence's source of supply, type of drug, and geographic region all remained the same. Thus, we conclude the district court did not clearly err in

determining that the methamphetamine attributed to Lawrence based on Maskewit and Grother's testimony was relevant conduct. See Bieri, 21 F.3d at 817.

C.

Finally, Lawrence argues the district court erred by including one pound of ice methamphetamine based on Grother's testimony in its drug-quantity calculation. Lawrence contends it was improper for the district court to rely on Grother's testimony because it was unreliable and inconsistent.

"[A] sentencing court may consider relevant information . . . provided that the information has sufficient indicia of reliability to support its probable accuracy." United States v. Luna, 265 F.3d 649, 652 (8th Cir. 2001) (second alteration in original) (internal quotation marks and citation omitted). Further, "[i]t is . . . well established that in sentencing matters 'a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal.'" Id. (quoting United States v. Causor-Serrato, 234 F.3d 384, 390 (8th Cir. 2000)).

In this case, Grother's testimony regarding trips to Omaha during which Lawrence obtained ice methamphetamine was consistent with other testimony about Lawrence's source. Thus, the testimony bore "indicia of reliability to support its probable accuracy." Id.

Further, the district court did not take the drug quantity provided by Grother at face value. Rather, the court relied on the Government's drug-quantity calculation, which included only one pound of ice methamphetamine based on Grother's testimony. The Government's calculation was more conservative than the calculation in the PSR. Although, as the court noted, Grother may have embellished his testimony, the court found Grother's testimony reliable. And because of possible embellishment, the court attributed only one pound of ice methamphetamine to

Lawrence, discounting the three to four pounds of ice methamphetamine Grother testified to.  See United States v. Taylor, 72 F.3d 533, 544 (7th Cir. 1995) ("This process of 'discounting' the estimates takes into account the possibility that drug use and other factors may have adversely affected perception and memory.").

Finally, we observe that even if the district court had not attributed any methamphetamine to Lawrence based on Grother's testimony, Lawrence would still have a base offense level of 34 and an adjusted total offense level of 36.  As a result, the district court did not err in relying on Grother's testimony in its drug-quantity calculation.

III.

Accordingly, we affirm the judgment of the district court.

_____