# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-4066

_____

United States of America

*Plaintiff - Appellee*

v.

Sarah Majid Zeaiter

*Defendant - Appellant*

_____

No. 16-4118

_____

United States of America

*Plaintiff - Appellee*

v.

Ali Afif Al Herz

*Defendant - Appellant*

_____

No. 16-4555

_____

United States of America

*Plaintiff - Appellee*

v.

Bassem Afif Herz

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 9, 2018
Filed: June 11, 2018

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Ali Afif Al Herz (Ali), Bassem Afif Herz (Bassem), and Sarah Majid Zeaiter (collectively, defendants) pleaded guilty to conspiring to violate multiple firearms laws in violation of 18 U.S.C. § 371, conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h), and exporting firearms and ammunition without a license in violation of 22 U.S.C. § 2778. Ali also pleaded guilty to being a domestic abuser in possession of a firearm in violation of 18 U.S.C. § 922(g)(9). The district court[1] sentenced Ali to 342 months' imprisonment, Bassem to 97 months' imprisonment, and Zeaiter to 87 months' imprisonment, with each sentence to be followed by 3 years of supervised release. Defendants challenge their sentences on various grounds. We affirm.

_____

[1]The Honorable Linda R. Reade, then Chief Judge, United States District Court for the Northern District of Iowa.

## I. Background

Ali and Bassem dispute how this case began. According to Ali, Bassem recruited both Ali and Ali's son, Adam Herz (Adam), to participate in a scheme to purchase and ship firearms to Lebanon for resale. According to Bassem, Adam initially approached Bassem with the idea who then suggested that they speak with Ali, because Ali previously had shipped firearms to Lebanon. Ultimately, the three men agreed to work together to carry out the operation.

As part of the conspiracy, Ali and Bassem provided money to purchase the firearms, and Adam used his name for the shipping documents. Zeaiter, Bassem's wife, also became involved and opened a bank account for the operation. On the forms she completed to open the account, she falsely claimed to be a United States citizen.[2] All four individuals thereafter obtained permits that allowed them to procure firearms for private use.

Ali and Bassem began purchasing firearms in December 2013, Adam began purchasing firearms in January 2014, and Zeaiter began purchasing firearms in June 2014. Ali and Adam also purchased skidloaders, in which the firearms were concealed during shipment. In March 2014, Ali shipped four skidloaders containing at least thirty firearms as well as ammunition to his residence in Lebanon. Ali, Adam, Bassem, and Zeaiter then traveled to Lebanon, where Ali sold the firearms. The

---

[2]Zeaiter was born in Lebanon but came to the United States in 2013 as a lawful permanent resident. Ali was also born in Lebanon and came to the United States in 1984 on a student visa. He became a United States citizen in 1991. Bassem was born in Kuwait and came to the United States on an immigrant visa in 2000. He became a United States citizen in 2002. Adam was born in the United States and is a United States citizen.

shipment's profit was $50,000, of which Bassem received $20,000, and Ali and Adam each received $15,000.

The four individuals returned to the United States in May 2014 and once again began purchasing firearms. Ali provided money for Adam to purchase the firearms, and Bassem provided money to Zeaiter to do the same, instructing her on which firearms to buy. Ali and Adam also purchased more skidloaders.

In August 2014, Ali, Bassem, and Adam sent another shipment to Ali's residence in Lebanon. This shipment contained three skidloaders, which concealed at least seventy firearms and hundreds of rounds of ammunition. Ali returned to Lebanon to meet the shipment. Once there, Ali sold the skidloaders and firearms for a profit of $150,000, which was to be split equally between Ali, Bassem, and Adam. Ali and Bassem were also reimbursed for their purchasing and shipping expenses. Bassem was upset, however, with the amount of money that Ali had received from this shipment, claiming that Bassem should have received more for the firearms.

Ali returned to the United States in December 2014, with more than $60,000 in cash. The day after he returned, Ali received a $50,000 wire transfer from a firearms dealer in Lebanon that was to be used to purchase more firearms. Ali then purchased two more skidloaders, and Bassem purchased almost $8,000 worth of ammunition, some of which Bassem purchased in Zeaiter's name and by using her bank account.

In January 2015, Bassem again became upset after learning that Ali had already negotiated another deal with a firearms dealer in Lebanon and that Ali had received an advance to purchase more firearms. Bassem told Ali and Adam that he no longer desired to be partners with them, whereupon Ali went to Bassem's apartment and took most of the firearms that had recently been purchased.

Zeaiter renewed her firearms permit in February 2015. She and Bassem continued to purchase firearms and ammunition throughout the month of February. Bassem also purchased three skidloaders under Zeaiter's name and by using her bank account.

That same month, law enforcement received a report that a firearms licensee had observed three men and one woman purchasing approximately twenty firearms at various firearms shows. The licensee was concerned because the same four individuals had purchased approximately 2,000 to 3,000 rounds of ammunition, at least nineteen firearms, and the parts to assemble fifteen ArmaLite (AR) assault rifles from his store. He also reported that while at his store, Ali had made a request to purchase AR accessories and that when making the request, Ali had referred to a text message on his phone that appeared to be written in a foreign language.

In March 2015, Bassem and Zeaiter attempted to ship another container to Lebanon, which contained three skidloaders, fifty-three firearms, and thousands of rounds of ammunition. The container initially was sent to a port in Virginia, where the Department of Homeland Security intercepted it and seized its contents.

Meanwhile, Ali and Adam continued to buy skidloaders, firearms, and ammunition in preparation for their own shipment. In May 2015, they attempted to ship a container to Lebanon that contained two skidloaders, ninety-nine firearms, thousands of rounds of ammunition, and other firearm accessories. The Department of Homeland Security intercepted the container before it left Iowa.

After each defendant pleaded guilty and admitted to the facts alleged in the second superseding indictment, the district court conducted individual sentencing hearings. The court concluded that under the United States Sentencing Guidelines (Guidelines or U.S.S.G.), Ali had an advisory sentencing range of 360 months' to life imprisonment based on a total offense level of 42 and a criminal history category of

I, Bassem had an advisory sentencing range of 78 to 97 months' imprisonment based on a total offense level of 28 and a criminal history category of I, and Zeaiter had an advisory sentencing range of 70 to 87 months' imprisonment based on a total offense level of 27 and a criminal history category of I. The district court imposed the sentences set forth above, which defendants now appeal. We address each defendant's challenge in turn.

## II. Discussion

"We review a sentence in two parts: first, we review for significant procedural error, such as an improper calculation of the advisory sentencing guidelines range; and second, absent significant procedural error, we review for substantive reasonableness." United States v. Fischer, 551 F.3d 751, 754 (8th Cir. 2008). In reviewing a sentence for procedural errors, we review a district court's interpretation of the Guidelines *de novo* and its factual findings for clear error. United States v. Lawrence, 854 F.3d 462, 466 (8th Cir. 2017). "The district court's factual determinations will stand unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Id. (internal quotations omitted).

In the absence of procedural error, we then consider the substantive reasonableness of a sentence, applying an abuse of discretion standard. United States v. Godfrey, 863 F.3d 1088, 1099 (8th Cir. 2017). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Id. (quoting United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)).

## III. Ali Herz

Ali first argues that the district court erred in imposing a four-level sentence enhancement for his role in the offense. Under U.S.S.G. § 3B1.1(a), "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," the district court may increase the defendant's sentence by four levels. The government bears the burden to prove the defendant's role in the offenses by a preponderance of the evidence. United States v. Rodgers, 122 F.3d 1129, 1133 (8th Cir. 1997).

Our court has broadly defined the terms "organizer" and "leader." United States v. Zimmer, 299 F.3d 710, 719 (8th Cir. 2002). In making this determination, we consider the following factors: "the defendant's decision-making authority, the nature of his participation in the crime, whether he recruited accomplices, the degree of his participation in organizing the offense, and his control and authority over others." United States v. Thompson, 210 F.3d 855, 861 (8th Cir. 2000) (citing U.S.S.G. § 3B1.1, cmt. 4).

Ali does not dispute that there were five or more participants in the conspiracy or that it was otherwise extensive. He argues instead that his role was that of a partner and that his degree of responsibility was not greater than that of his codefendants. On the facts stipulated to in his plea agreement, Ali's activities satisfy several of the factors set forth in the Guidelines. He was responsible for making arrangements for the first two shipments, he was responsible for negotiating with buyers in Lebanon, he made the final decision as to whom the firearms would be sold in Lebanon, and he alone traveled to Lebanon to arrange for the sale of the August 2014 shipment's firearms.

At sentencing, a special agent for the Department of Homeland Security testified regarding Ali's role in the conspiracy. He stated that Ali was responsible for

distributing the proceeds from the sales and that Ali made the decision to sell the firearms from the March 2014 shipment to his cousin—a firearms dealer—against Bassem's wishes. He further testified that Ali negotiated future resale agreements, that he had received a monetary advance to purchase more firearms, and that he then supplied Adam with funding to make more purchases.

In light of Ali's extensive decision-making authority, his integral participation in the conspiracy, and his exercise of some control over Adam, as well as over those to whom he sold the firearms for resale, we conclude that the district court did not clearly err in determining that Ali was an organizer or leader of this conspiracy. See United States v. Harry, 960 F.2d 51, 55 (8th Cir. 1992) (holding that a district court did not clearly err in imposing an organizer or leader sentencing enhancement upon a defendant who decided the quantity of marijuana to be obtained for resale and to whom it would be resold, who recruited another to resell the marijuana, and who planned the ordering, storage, and redistribution of the drugs).

Ali next contends that the district court erred in imposing a ten-level sentencing enhancement after finding that his offense conduct involved 200 or more firearms, see U.S.S.G. § 2K2.1(b)(1)(E), a fact that the government was required to prove by a preponderance of the evidence. United States v. Smart, 501 F.3d 862, 867 (8th Cir. 2007).

The government presented evidence that when questioned after his arrest, Ali estimated that there were 227 firearms within the March 2014, August 2014, and May 2015 shipments. He argues that the court should not rely on that figure because it does not distinguish between firearms that he had purchased and shipped and firearms that Bassem had purchased and shipped after the conspiracy had ended. He contends instead that he should have received only an eight-level sentencing enhancement because there were between 100 and 199 total firearms contained in these three

shipments.  <u>See</u> U.S.S.G. § 2K2.1(b)(1)(D).  We find this argument to be without merit.

The government presented evidence that Ali was responsible for at least one additional firearm that was found in Bassem and Zeaiter's March 2015 shipment. When the serial numbers from the March 2015 shipment were compared with the purchase logs, it was discovered that one of the firearms in the shipment had been purchased by Ali, thus increasing Ali's total accountable number of firearms to at least 200.  Moreover, evidence at sentencing also showed that Ali continued to collaborate with Bassem after their January 2015 verbal agreement to discontinue working together by providing Bassem with the name of a customs broker in Lebanon who would be able to assist Bassem in shipping the March 2015 container—containing fifty-three firearms—from the port to a place where the firearms could be unloaded.  Based on the evidence presented at sentencing, we conclude that the district court committed no error in finding that Ali was responsible for at least 200 guns and in imposing a ten-level sentencing enhancement. <u>See</u> U.S.S.G. § 1B1.3(a)(2) (stating the relevant conduct for purposes of sentencing includes "all acts . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction"); <u>see also</u> <u>Lawrence</u>, 854 F.3d at 468 (holding that the district court did not clearly err when it considered a defendant's conduct after the end of a conspiracy when the conduct largely remained the same).

Ali further argues that because he pleaded guilty to and truthfully admitted his criminal conduct, he should not have been denied a three-level reduction for acceptance of responsibility.  "A district court's factual determination about whether the defendant accepted responsibility is entitled to great deference, and we will reverse it only if it is so clearly erroneous as to be without foundation." <u>United States v. Walker</u>, 688 F.3d 416, 426 (8th Cir. 2012).

Under the Guidelines, a defendant's offense level may be decreased "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Section 3E1.1(a) requires, however, that the defendant accept "responsibility for *all* of the conduct that is part of his conviction, . . . [and] may not minimize conduct or partially accept responsibility." Fischer, 551 F.3d at 755 (quoting United States v. Erhart, 415 F.3d 965, 971 (8th Cir. 2005) (emphasis in original)). Thus a defendant who pleads guilty "is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1 cmt. n.3. Rather, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true" may be denied the adjustment because he has "acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1(A).

Ali contends that the district court clearly erred in finding that he had not accepted responsibility. He claims that his objections to the presentence report's (PSR) description of the relevant conduct were not frivolous, reasoning that he objected only to the legal conclusions drawn from the facts that he had admitted. We disagree. In addition to objecting to the number of firearms that he had previously admitted to, Ali also stipulated to several statements in the plea agreement that he later objected to in the PSR. For example, in the plea agreement Ali admitted that he arranged to sell firearms to a firearms dealer, but then denied doing so in his objections to the PSR. He claimed that he sold the firearms to his cousin, but the record reveals that his cousin is a firearms dealer. Ali also stipulated in the plea agreement that each of the overt acts in the indictment was accepted as true, but then denied making such stipulation in his written objections to the PSR. In light of Ali's attempt to minimize his conduct and his frivolous objections to his relevant conduct, we conclude that the district court did not clearly err in finding that he had not accepted responsibility. Cf. Fischer, 551 F.3d at 755 (holding that the district court did not clearly err in denying acceptance of responsibility to a defendant who at his plea hearing admitted to operating as a methamphetamine distributor, but whose

objections to his PSR attempted to minimize the extent of his involvement in the offense).

Having found no procedural error, we turn to Ali's argument that the district court imposed a substantively unreasonable sentence. Because the Guidelines range was properly calculated and the 342-month sentence was below that range, we conclude that the sentence was not substantively unreasonable. See United States v. McCauley, 715 F.3d 1119, 1127 (8th Cir. 2013) (stating that when a district court imposes a sentence that is below the Guidelines range, it is "nearly inconceivable" that the court abused its discretion by not varying downward further).

## IV. Bassem Herz

Bassem argues that the district court erred in imposing a three-level sentence enhancement based on his role as a manager or supervisor. See U.S.S.G. § 3B1.1(b). For this enhancement to be applicable, the criminal activity must have involved five or more participants or was otherwise extensive, and the defendant must have managed or supervised at least one other participant. U.S.S.G. § 3B1.1(b) cmt. n.4. Bassem does not dispute that he recruited and directed Zeaiter's activities. He instead asserts that at most he should have received a two-level enhancement for his role as a manager or supervisor because the conspiracy did not involve five or more people and was not otherwise extensive, but rather "was a small venture within family, and not complicated." We reject this characterization.

The Guidelines specifically define "participant" as a "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 cmt. n.1. Here the criminal activity involved Ali, Bassem, Zeaiter, Adam, and multiple firearms dealers in Lebanon. Because there was an ongoing relationship with at least one of these dealers, the dealer was properly considered to be a participant in the conspiracy. See United States v. Sykes, 854 F.3d

-11-

457, 460 (8th Cir. 2017) (upholding a district court's finding that drug suppliers were participants under § 3B1.1 because defendants had an ongoing relationship with them).

We also reject Bassem's assertion that the criminal activity in this case was not otherwise extensive. The Guidelines background commentary explains that in assessing whether an organization is extensive, we are to consider "all persons involved during the course of the entire offense." U.S.S.G. § 3B1.1 cmt. n.3. Bassem and the others obtained permits to purchase firearms, bought heavy machinery with a plan to conceal the firearms and ammunition therein, shipped multiple containers to Lebanon containing the firearms, traveled internationally to sell the contents of the shipments, and developed relationships with international firearms dealers for continued sales. The district court thus did not err in finding that the conspiracy was otherwise extensive. Cf. Harry, 960 F.2d at 54 (concluding that a conspiracy was otherwise extensive when the defendant received several shipments of marijuana, distributed the drugs, and traveled with other distributors).

Bassem next argues that the government should have been required to file a substantial assistance motion and that the district court abused its discretion in denying his request for what he styled as a "bad-faith hearing."[3] United States v. McClure, 338 F.3d 847, 850 (8th Cir. 2003) (standard of review). Under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, the government may file a motion in support of a downward departure if the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. "A

---

[3]Although we have in times past referred to "bad faith" as a basis for challenging the government's decision not to file a substantial assistance motion, see e.g. United States v. Davis, 397 F.3d 672, 675-77 (8th Cir. 2005), we have also stated that it "is not a constitutional standard." United States v. Moeller, 383 F.3d 710, 712 (8th Cir. 2004); Davis, 397 F.3d at 677 (Colloton, J., concurring). See also United States v. Jordan, 877 F.3d 391, 394-95 (8th Cir. 2017).

district court can review the government's decision not to file a substantial assistance motion only if a defendant has made a substantial threshold showing that the decision was based on an unconstitutional motive or was not rationally related to any legitimate Government end . . . ." McClure, 338 F.3d at 850 (internal citations and quotations omitted). If under a plea agreement the government has specifically retained its discretion under § 5K1.1 and the defendant cannot make such showing, then a motion to compel will be defeated. Id.

Bassem's plea agreement stated that if he provided substantial assistance, the government in its sole discretion "may, but shall not be required to," move for a downward departure. The government thus was under no duty to move for a downward departure based on substantial assistance. See United States v. Perez, 526 F.3d 1135, 1138 (8th Cir. 2008) ("Both § 3553(e) and § 5K1.1 give 'the Government a power, not a duty, to file a motion when a defendant has substantially assisted.'" (quoting Wade v. United States, 504 U.S. 181, 185 (1992))). The plea agreement provided that the government would consider a motion based upon the following factors: "[1] the government's evaluation of the significance and usefulness of any assistance rendered by defendant; [2] the truthfulness, completeness, and reliability of any information or testimony provided by defendant; [3] the nature and extent of defendant's assistance; [4] any injuries suffered or any danger or risk of injury to defendant or family members resulting from any assistance provided; [5] the timeliness of any assistance provided by defendant; and [6] other benefits received by defendant in the plea agreement."

Although Bassem argues that the government unreasonably "failed to recognize and reward his immediate and extensive cooperation and assistance," he is not entitled to relief or a hearing based on his mere assertions. See Perez, 526 F.3d at 1138 ("[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." (quoting Wade,

-13-

504 U.S. at 186)). The government does not dispute that Bassem voluntarily participated in interviews with law enforcement, but rather contends that he was not truthful, that he lacked credibility, that he did not "tell the same story twice," and that he withheld significant information from the government. The district court reviewed hours of debriefing recordings and found that Bassem's statements were vague and that he mostly talked about himself, as opposed to proffering information that would assist in the investigation or prosecution of another.

Because Bassem has offered no evidence that the government's decision was based on an unconstitutional motive, and because the refusal was rationally related to a legitimate government end—providing incentive for defendants to fully and truthfully cooperate with authorities—Bassem failed to satisfy his threshold burden. See Id. at 1139 (deciding that the government's refusal to move for downward departure based on the defendant's untruthfulness was rationally related to the legitimate governmental interest in providing an incentive for defendants to fully cooperate (citing United States v. Wolf, 270 F.3d 1188, 1191 (8th Cir. 2001); United States v. Licona-Lopez, 163 F.3d 1040, 1042 (8th Cir. 1998) (same))). Accordingly, the district court did not err in denying Bassem's motion to hold a hearing and in refusing to compel the government to file a substantial assistance motion.

Finally, Bassem asserts that his sentence is substantively unreasonable, claiming that the district court abused its discretion by improperly weighing the significance of a nonresponsive, improvident remark that was not material testimony. We review the reasonableness of a sentence based on the factors laid out in § 3553(a). United States v. Miner, 544 F.3d 930, 932 (8th Cir. 2008).

During a previous interview, Bassem had told law enforcement that he had purchased approximately eighty firearms to be shipped to Lebanon, but then later stated that he had purchased only fifty-six. At sentencing, the government asked Bassem why he had originally stated that he had purchased eighty firearms. Bassem

responded that he had given that number because he was under pressure after the police had broken into his house, beaten him up, and thrown his infant child to the floor. Concerned, the district court asked for additional testimony on the matter. When the hearing reconvened the next day, Bassem recanted his testimony and stated that when the officers entered his apartment to execute a search warrant, the door opened and hit him in the face while he was holding his child.

Although the district court considered as an aggravating factor Bassem's false statements under oath, it did not abuse its discretion or impose a substantively unreasonable sentence. The court set forth several reasons for sentencing Bassem at the top of the Guidelines range, pointing to Bassem's social and family background, the seriousness of his violations, the types of firearms that were trafficked, the fact that he was being held responsible for a conservative number of weapons under the Guidelines, that he did not report his income for the sales of the firearms on federal and state tax returns or on his application for rent and food assistance, and that he knowingly sold firearms to illegal dealers in Lebanon. The court properly considered the § 3553(a) factors and acted well within its discretion in imposing a term of 97 months' imprisonment followed by a 3-year term of supervised release. See United States v. Benton, 627 F.3d 1051, 1055-56 (8th Cir. 2010) (upholding a sentence that was within the statutory limits, was sufficiently explained, and gave consideration to the appropriate factors).

## V. Sarah Zeaiter

Zeaiter argues that the district court erred in denying her a three-level mitigating role adjustment because she did not participate in the planning or organizing of the offense conduct, but instead acted only at the direction of her husband. See U.S.S.G. § 3B1.2 cmt. n.3 (stating that a defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity" may receive a sentencing adjustment). We review

the district court's finding on this issue for clear error, keeping in mind that Zeaiter bore the burden of proving that she is entitled to the reduction. United States v. Alaniz, 148 F.3d 929, 937 (8th Cir. 1998). Although Zeaiter played a lesser role than did Ali or Bassem, the district court did not err in determining that she was aware of the scope and structure of the offense conduct and had actively participated in what the district court described as a well-planned, coordinated scheme. Zeaiter falsely claimed to be a United States citizen so that she could open a bank account in furtherance of the conspiracy. She also procured a permit to purchase firearms, purchased firearms to be sold, assisted with preparing shipments, and traveled to Lebanon when the firearms were shipped. The record thus supports the finding that her involvement was greater than that of a minor or minimal participant.

We similarly reject Zeaiter's argument that the court abused its discretion in denying her a downward variance. The district court recited a number of § 3553(a) factors that militated against a downward variance, including that Zeaiter had a serious role in the offense, that she is a well-educated, internationally traveled person who acted on her own volition and without coercion, and that she at all times knew that her conduct was illegal. The district court thus more than adequately explained its well-supported rationale for denying the motion for a downward variance.

The sentences are affirmed.

_____

-16-